## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JUAN FELIX TRINIDAD-GARCIA and JUAN FELIX TRINIDAD-RODRIGUEZ,

        Plaintiffs,

        v.

POPULAR, INC.; BANCO POPULAR DE PUERTO RICO; POPULAR SECURITIES LLC; and INSURANCE COMPANIES 1-3,

        Defendants.

Oral Argument Requested

Civil Action No. 21-1529 (ADC)

## DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

Néstor M. Méndez-Gómez
María D. Trelles-Hernández
Christian A. Muñoz Lugo
PIETRANTONI MÉNDEZ & ALVAREZ LLC
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 773-6000

Richard C. Pepperman II (*pro hac vice* pending)
Benjamin R. Walker (*pro hac vice* pending)
Jared H. Rosenfeld (*pro hac vice* pending)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000

*Attorneys for Defendants Popular, Inc., Banco Popular de Puerto Rico, and Popular Securities LLC*

March 21, 2022

# TABLE OF CONTENTS

*Page*

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................3

     A.    The Parties .............................................................................................3

     B.    Plaintiffs' Secured Lending Arrangement with Banco Popular ............................4

     C.    The Parties' Prior Litigation .................................................................5

          1.    Plaintiffs' FINRA Arbitration ...............................................5

          2.    Banco Popular's Collections Action ........................................5

          3.    The Parties' Unsuccessful Settlement Negotiations ........................6

     D.    Plaintiffs' Claims in This Action .................................................6

ARGUMENT .......................................................................................................7

I.    Res Judicata Bars Plaintiffs' BHCA Claims and Duplicative State-Law Claims ..............7

     A.    The FINRA Arbitral Award Precludes Plaintiffs' Claims......................7

     B.    Trinidad-García's Claims Were Compulsory Counterclaims in the Collections Action ....................................10

II.    Plaintiffs' BHCA Claims Are Untimely ........................................................11

     A.    The Statute of Limitations Bars Plaintiffs' BHCA Claims....................11

     B.    There Is No Basis to Toll the Statute of Limitations .............................11

          1.    The Statute of Limitations Was Not Tolled by the "Continuing Violation" Doctrine....................................12

          2.    The Statute of Limitations Was Not Tolled by Fraudulent Concealment .......................................14

          3.    Excusable Neglect Is Not a Basis to Toll the Statute of Limitations.........15

III.    The Complaint Fails to State a Tying Claim Under the BHCA .......................................16

     A.    Plaintiffs Do Not Allege an Unlawful Tying Arrangement....................................16

B.      Plaintiffs Do Not Allege an Unusual Arrangement in the Banking Industry ........19

C.      Plaintiffs Do Not Allege Injuries Suffered by Reason of Unlawful Tying............21

IV.    Popular and PSL Are Not Proper Defendants for a BHCA Claim ...................................22

V.     Plaintiffs' Claims Against PSL Are Subject to Mandatory Arbitration ...........................23

VI.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Any State-
       Law Claims That Are Not Dismissed on the Merits..........................................................24

CONCLUSION.......................................................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Adelphia Recovery Tr.* v. *Bank of Am., N.A.*,
    646 F. Supp. 2d 489 (S.D.N.Y. 2009)..................................................................22

*Airframe Sys., Inc.* v. *Raytheon Co.*,
    601 F.3d 9 (1st Cir. 2010).................................................................................9

*Alpine Elec. Co.* v. *Union Bank*,
    776 F. Supp. 486 (W.D. Mo. 1991) ..................................................................19

*Apparel Art Int'l, Inc.* v. *Amertex Enters. Ltd.*,
    48 F.3d 576 (1st Cir. 1995)..........................................................................7, 8

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009).........................................................................................7

*B. C. Recreational Indus.* v. *First Nat'l Bank of Boston*,
    639 F.2d 828 (1st Cir. 1981).......................................................................3, 19

*Berkson* v. *Del Monte Corp.*,
    743 F.2d 53 (1st Cir. 1984).............................................................................14

*Board of Governors* v. *Dimension Fin. Corp.*,
    474 U.S. 361 (1986).........................................................................................18

*Bolduc* v. *Beal Bank, SSB*,
    994 F. Supp. 82 (D.N.H. 1998).......................................................................22

*Bossé* v. *N.Y. Life Ins. Co.*,
    992 F.3d 20 (1st Cir. 2021).............................................................................23

*Campbell* v. *Wells Fargo Bank, N.A.*,
    781 F.2d 440 (5th Cir. 1986) ..........................................................................21

*Christensen* v. *Harris Cty.*,
    529 U.S. 576 (2000).........................................................................................18

*In re Colonial Mortg. Bankers Corp.*,
    324 F.3d 12 (1st Cir. 2003)...............................................................................9

*Colorado River Water Conservation District* v. *United States*,
    424 U.S. 800 (1976)......................................................................................3, 24

*Currie* v. *Grp. Ins. Comm'n*,
290 F.3d 1 (1st Cir. 2002) ....................................................................25

*Diversified Foods, Inc.* v. *First Nat'l Bank of Boston*,
785 F. Supp. 8 (D. Me. 1992) ................................................................8

*Doe* v. *Brown Univ.*,
166 F. Supp. 3d 177 (D.R.I. 2016) ........................................................16

*England* v. *Medical Examiners*,
375 U.S. 411 (1964) ...........................................................................9, 10

*Epstein* v. *C.R. Bard, Inc.*,
460 F.3d 183 (1st Cir. 2006) ................................................................14

*Exch. Nat'l Bank of Chicago* v. *Daniels*,
768 F.2d 140 (7th Cir. 1985) ...............................................................22

*Figueroa Ruiz* v. *Alegria*,
896 F.2d 645 (1st Cir. 1990) ................................................................16

*Fisk* v. *Mid Coast Presbyterian Church*,
2017 WL 1755950 (D. Me. May 4, 2017) ............................................24

*FleetBoston Fin. Corp.* v. *Alt*,
638 F.3d 70 (1st Cir. 2011) ...................................................................8

*Fuller Co.* v. *Ramon I. Gil, Inc.*,
782 F.2d 306 (1st Cir. 1986) ................................................................10

*Geiger* v. *Foley Hoag LLP Ret. Plan*,
521 F.3d 60 (1st Cir. 2008) ..................................................................10

*Gonzalez-Maldonado* v. *MMM Healthcare, Inc.*,
693 F.3d 244 (1st Cir. 2012) ................................................................13

*Gustavsen* v. *Alcon Labs., Inc.*,
272 F. Supp. 3d 241 (D. Mass. 2017) ..................................................18

*H & R Block Tax Servs., Inc.* v. *Rivera-Alicea*,
570 F. Supp. 2d 255 (D.P.R. 2008) ......................................................25

*Info. Exch. Sys., Inc.* v. *First Bank Nat'l Ass'n*,
994 F.2d 478 (8th Cir. 1993) ..........................................................11, 14

*Irwin* v. *Dep't of Veterans Affairs*,
498 U.S. 89 (1990) ..............................................................................15

*Jimenez* v. *Rodríguez-Pagan*,
    597 F.3d 18 (1st Cir. 2010) ................................................................................25

*Kale* v. *Combined Ins. Co. of Am.*,
    924 F.2d 1161 (1st Cir. 1991) ...............................................................................9

*Klehr* v. *A.O. Smith Corp.*,
    521 U.S. 179 (1997) ......................................................................................12, 13

*Koufos* v. *U.S. Bank, N.A.*,
    939 F. Supp. 2d 40 (D. Mass. 2013) ...................................................................16

*Kowalski* v. *Gagne*,
    914 F.2d 299 (1st Cir. 1990) .................................................................................5

*Leon* v. *RG Premier Bank of P.R.*,
    2013 WL 12234676 (D.P.R. Sept. 5, 2013) ........................................................23

*Martinez-Rosado* v. *Instituto Medico Del Norte*,
    145 F. Supp. 2d 164 (D.P.R. 2001) .....................................................................24

*Mass. Sch. of Law at Andover, Inc.* v. *Am. Bar Ass'n*,
    142 F.3d 26 (1st Cir. 1998) ..............................................................................2, 8

*McClain* v. *S.C. Nat'l Bank*,
    105 F.3d 898 (4th Cir. 1997) ..............................................................................19

*McGarry & McGarry, LLC* v. *Rabobank, N.A.*,
    847 F.3d 404 (7th Cir. 2017) ..............................................................................21

*Mendez Internet Mgmt. Servs., Inc.* v. *Banco Santander de P.R.*,
    2009 WL 1392189 (D.P.R. May 15, 2009) ......................................................2, 16

*Menominee Indian Tribe of Wisc.* v. *United States*,
    577 U.S. 250 (2016) ............................................................................................15

*Mid-State Fertilizer Co.* v. *Exch. Nat'l Bank of Chicago*,
    693 F. Supp. 666 (N.D. Ill. 1988) .......................................................................21

*N. Pac. Ry. Co.* v. *United States*,
    356 U.S. 1 (1958) ................................................................................................16

*Neca Mortg. Corp.* v. *A & W Dev. S.E.*,
    137 P.R. Dec. 860 (1995) ....................................................................................10

*Nesglo, Inc.* v. *Chase Manhattan Bank, N.A.*,
    506 F. Supp. 254 (D.P.R. 1980) ...............................................................11, 19, 20

*Nken* v. *Holder*,
    556 U.S. 418 (2009)................................................................22

*Matter of One (1) Vessel (Victoria) Registration No. PR-1268-AC*,
    2021 WL 1784409 (D.P.R. May 4, 2021)............................15

*Otero-Torres* v. *Collazo-Rivera*,
    2010 WL 3087481 (D.P.R. Aug. 5, 2010)...........................10

*Philibotte* v. *Nisource Corp. Servs. Co.*,
    793 F.3d 159 (1st Cir. 2015).................................................15

*Philips Med. Sys. P.R., Inc.* v. *Alpha Biomedical & Diagnostic Corp.*,
    2020 WL 7029014 (D.P.R. Nov. 30, 2020)..........................16

*Powers* v. *Boston Cooper Corp.*,
    926 F.2d 109 (1st Cir. 1991).................................................14

*R-G Fin. Corp.* v. *Vergara-Nunez*,
    381 F. Supp. 2d 1 (D.P.R. 2005).....................................2, 11

*Rio Grande Cmty. Health Ctr., Inc.* v. *Rullan*,
    397 F.3d 56 (1st Cir. 2005)...................................................25

*Rivera* v. *Murphy*,
    979 F.2d 259 (1st Cir. 1992).................................................24

*Rodi* v. *S. New England Sch. of Law*,
    389 F.3d 5 (1st Cir. 2004)......................................................3

*Roman* v. *UBS Fin. Servs., Inc. of Puerto Rico*,
    2017 WL 3608238 (D.P.R. Aug. 21, 2017)..........................24

*Ryan* v. *Illinois*,
    1995 WL 516603 (N.D. Ill. Aug. 28, 1995) .....................12, 23

*S. Port Marine, LLC* v. *Gulf Oil Ltd. P'ship*,
    234 F.3d 58 (1st Cir. 2000)...................................................24

*Schatz* v. *Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012).....................................................7

*Skidmore* v. *Swift & Co.*,
    323 U.S. 134 (1944)..............................................................18

*Soto–Fonalledas* v. *Ritz–Carlton San Juan Hotel Spa & Casino*,
    640 F.3d 471 (1st Cir. 2011).................................................23

*Truck Drivers & Helpers Union, Local No. 170* v. *NLRB*,
 993 F.2d 990 (1st Cir. 1993) ................................................................................15

*Valle-Arce* v. *P.R. Ports Auth.*,
 585 F. Supp. 2d 246 (D.P.R. 2008) ......................................................................24

*Williams* v. *Porter Bancorp, Inc*.,
 41 F. Supp. 3d 676 (W.D. Ky. 2014) ....................................................................22

**Statutes and Rules**

28 U.S.C. § 1367 ........................................................................................................3, 24

12 U.S.C. § 1972 ...................................................................................................... *passim*

P.R. R. Civ. P. 11.1 ......................................................................................................10

Fed. R. Civ. P. 9(b) ......................................................................................................14

**Other Authorities**

116 Cong. Rec. 32125 (1970) .......................................................................................20

S. Rep. No. 91-1084, 91st Cong., 2d Sess., 214 (Aug. 10, 1970) ...............................20

62 Fed. Reg. 9290 (Feb. 28, 1997) ..............................................................................22

68 Fed. Reg. 52,024 (Aug. 29, 2003) ...........................................................................18

Letter from J. Virgil Mattingly, Jr. (General Counsel, Federal Reserve Board) to
 David Teitelbaum (Feb. 2, 2004),
 https://www.federalreserve.gov/boarddocs/legalint/bhc_changeincontrol/2004/
 20040202 (last accessed Mar. 21, 2021) ......................................................18, 20

Investor Alert: Securities-Backed Lines of Credit (Dec. 21, 2015),
 https://perma.cc/N2J5-MFGR (last accessed Mar. 21, 2021) ...............................20

**COME NOW,** Defendants Banco Popular de Puerto Rico ("Banco Popular"), Popular Securities, LLC ("PSL"), and Popular, Inc. ("Popular"), without submitting to this Honorable Court's jurisdiction, and respectfully move the Court, through their undersigned counsel, to dismiss the Amended Complaint ("Complaint" or "AC"), pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, on the grounds set forth below.

## INTRODUCTION

This case is the latest iteration of a long-running, multi-front dispute originating from a secured lending arrangement between Banco Popular and Plaintiffs Juan Félix Trinidad-García and Juan Félix Trinidad-Rodríguez. In November 2010, Banco Popular extended Plaintiffs secured lines of credit ("SCLs") with a total value of $25 million. As collateral for these loans, Plaintiffs pledged their investment portfolios to be held at a Banco Popular affiliate, PSL. Plaintiffs used the $25 million to repay SCLs they had maintained at other broker-dealers that also were secured by their investment portfolios.

Over eleven years later, and after extensive litigation in other forums arising from declines in the value of the investment holdings securing their loans, Plaintiffs assert for the first time that these standard securities-backed lines of credit established in 2010 constituted an unlawful tying of credit to investment services under the Bank Holding Company Act Amendments of 1970 ("BHCA"). Plaintiffs also seek to reassert state-law claims that they already asserted in other litigation. All of these claims should be dismissed.

As an initial matter, *res judicata* bars Plaintiffs' belated tying claims and duplicative state-law claims because those claims either were asserted or could have been asserted in prior proceedings. Plaintiffs previously asserted claims arising from the same secured lending arrangement in a FINRA arbitration against PSL commenced in 2014. That arbitration has concluded, and a federal district court has confirmed the arbitral award, rendering it preclusive of

all claims arising from the same "common nucleus of operative facts." *Mass. Sch. of Law at Andover, Inc.* v. *Am. Bar Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998). Plaintiffs' apparent dissatisfaction with the outcome does not entitle them to re-litigate their grievances in this Court. Plaintiffs' claims also are barred because they were compulsory counterclaims in a separate action brought by Banco Popular against Trinidad-García in the Puerto Rico Court of First Instance ("CFI"). *See R-G Fin. Corp.* v. *Vergara-Nunez*, 381 F. Supp. 2d 1, 4 (D.P.R. 2005). Plaintiffs cannot now assert those claims in this Court, years after the parties' dispute arose.

Even setting aside *res judicata*, Plaintiffs' BHCA claims should be dismissed for two additional reasons. *First*, the BHCA's four-year statute of limitations bars those claims. Because any cause of action accrued when Plaintiffs received their SCLs in November 2010, their BHCA claims are plainly untimely. Although the Complaint argues that the statute of limitations was tolled because of a purported "continuing violation" of the BHCA's anti-tying provisions, that tolling doctrine does not apply here because the alleged tying violation was not "continuing"—it occurred at a single point in time in November 2010 when Banco Popular purportedly tied an extension of credit to investment services. Even if the doctrine did apply, it would not enable Plaintiffs to recover damages based on acts occurring more than four years ago. Nor do Plaintiffs' conclusory allegations of fraudulent concealment support tolling: Plaintiffs were on notice of their tying claims in November 2010 when they received the SCLs and used the proceeds to repay previous SCLs, and Plaintiffs nowhere allege what facts supposedly were fraudulently concealed or what due diligence they undertook to discover their claims.

*Second*, Plaintiffs fail to plead viable BHCA claims. To plead a tying claim under the BHCA, Plaintiffs must allege that Defendants imposed an unlawful tying arrangement involving two separate products that was unusual in the banking industry. *Mendez Internet Mgmt. Servs.,*

*Inc.* v. *Banco Santander de P.R.*, 2009 WL 1392189, at *5 (D.P.R. May 15, 2009), *aff'd*, 621 F.3d 10 (1st Cir. 2010). SCLs are a single banking product permitted by the BHCA, not an illegal tying of two separate products (credit and investment services); nor are they in any way unusual in the banking industry. *See*, *e.g.*, *B. C. Recreational Indus.* v. *First Nat'l Bank of Boston*, 639 F.2d 828, 832 (1st Cir. 1981) (BHCA "do[es] not interfere with the conduct of appropriate traditional banking practices" such as placing conditions on extension of credit "to protect the Bank's investment."). Plaintiffs' BHCA claims against Popular and PSL also should be dismissed because the BHCA authorizes suits only against banks, not against bank holding companies (Popular) and broker-dealers (PSL). And Plaintiffs' claims against PSL are subject to mandatory arbitration in any event.

Plaintiffs' BHCA claims are their only claims arising under federal law. If the Court dismisses those federal claims, as it clearly should, the Court should decline to exercise supplemental jurisdiction over any state-law claims not dismissed on the merits. *See* 28 U.S.C. § 1367(c)(3). Alternatively, the Court should abstain from hearing those state-law claims under the *Colorado River* abstention doctrine in view of the long-standing parallel lawsuit between Banco Popular and Trinidad-García pending in the CFI.

## BACKGROUND[1]

### A.    The Parties

Banco Popular is a bank subsidiary of Popular, a bank holding company. (AC ¶¶ 37–39.)

---

[1] On a Rule 12(b)(6) motion, the Court may consider "the complaint, documents annexed to it, and other materials fairly incorporated within it," including "documents referred to in the complaint" and "matters that are susceptible to judicial notice." *Rodi* v. *S. New England Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004). Accordingly, the Court may consider documents referred to throughout the Complaint, including (1) the Private Management Account Contracts (AC ¶¶ 5, 85); (2) the PSL Brokerage Account Customer Agreement (AC ¶ 85); (3) the Securities Pledge Agreements (AC ¶¶ 5, 85, 246); (4) the FINRA Statement of Claim (AC ¶ 131); (5) correspondence between the parties (AC ¶¶ 124–26); (6) the FINRA Arbitral Award (AC ¶¶ 155–60); and (7) Trinidad-García's Counterclaims filed in the litigation pending in the CFI (AC ¶ 133).

PSL, also a Popular subsidiary, is a registered broker-dealer and investment adviser.  (AC ¶ 41.)
Trinidad-García is a retired professional boxer, and Trinidad-Rodríguez is his father and former
trainer and manager.  (AC ¶¶ 18, 26.)

     **B.**    **Plaintiffs' Secured Lending Arrangement with Banco Popular**

     Plaintiffs allege that they previously had lines of credit from Wachovia secured by their
investment portfolios at Wachovia but that Wachovia refused to continue to extend them credit
because their portfolios were concentrated in "highly illiquid and leveraged" funds invested in
Puerto Rico government bonds.  (AC ¶¶ 85–86, 219.)  According to the Complaint, Plaintiffs
thus entered into agreements with Banco Popular in November 2010 to receive SCLs
collateralized by their investment portfolios to be held at PSL.  (AC ¶ 85.)  To memorialize that
secured lending arrangement, Plaintiffs signed (1) Private Management Account ("PMA")
documents opening accounts at Banco Popular for the SCLs, (2) investment account opening
documents with PSL, and (3) Pledge Agreements pledging their portfolios in the investment
accounts at PSL as collateral for the SCLs.  (AC ¶ 85.)

     The value of Puerto Rico government securities declined dramatically in 2013, resulting
in a significant deficiency in Plaintiffs' collateral accounts.  By 2014, the value of the pledged
collateral fell to $2.9 million less than what Trinidad-García owed Banco Popular.  (AC ¶¶ 121,
258.)  In May 2017 and October 2021, Plaintiffs demanded that Banco Popular transfer their
pledged collateral from their accounts at PSL to different advisors.  (AC ¶¶ 124, 128.)  Under the
Pledge Agreements, however, Banco Popular is not obligated to authorize withdrawals of the
collateral securing the SCLs from Plaintiffs' accounts at PSL until Plaintiffs repay the SCLs in
full, which they have not done.  (*See* Exs. 1 & 2 (Pledge Agreements) at 1.)  Banco Popular thus
refused both requests.  (*See* AC ¶¶ 126, 130; Ex. 3 (May 26, 2017 Letter) at 1–2.)

### C.    The Parties' Prior Litigation

Plaintiffs' investment losses prompted extensive litigation between the parties.  In those other cases, Plaintiffs challenged, as they do here, the creation of the SCLs and the management of their investment portfolios.  This litigation has been ongoing for nearly eight years.

#### 1.    Plaintiffs' FINRA Arbitration

On April 2, 2014, Plaintiffs asserted claims under the Securities Exchange Act of 1934 and the Puerto Rico Securities Act, as well as common-law claims, against Popular, PSL, and Banco Popular in an arbitration proceeding before FINRA.  (*See* AC ¶ 131; Ex. 4 (Arbitral Award) at 2.)  As in this action, Plaintiffs' claims in the FINRA arbitration challenged the creation and management of Plaintiffs' SCLs and investment portfolios, and sought recovery of their investment losses, the balance of the SCLs, and rescission of the loan agreements.  (*See* Ex. 5 (FINRA Statement of Claim) ¶¶ 1.4, 1.6–1.8, 14.3, 16.7, 17.2–17.3.)  The FINRA panel issued its award on October 28, 2021, ordering PSL to pay damages of $4.2 million to Trinidad-García and $2.4 million to Trinidad-Rodríguez—a small fraction of the approximately $60 million Plaintiffs sought.  (*See* Ex. 4 (Arbitral Award) at 2–3, 5.)[2]  The United States District Court for the District of Puerto Rico confirmed this arbitral award on December 15, 2021.[3]

#### 2.    Banco Popular's Collections Action

On April 15, 2014, Banco Popular brought an action in the CFI against Trinidad-García for breach of contract and other claims under the Puerto Rico Civil Code seeking to collect the money Banco Popular is owed on the SCLs (the "Collections Action").  (AC ¶ 133; *Banco Popular de Puerto Rico* v. *Trinidad García*, KCD 2014-0827 (P.R. CFI Apr. 15, 2014).)

---

[2] Popular and Banco Popular did not appear in the arbitration because they were not bound by an arbitration clause.  (*See* Ex. 4 (Arbitral Award) at 1.)

[3] This Court may take judicial notice of the confirmation.  *See Kowalski* v. *Gagne*, 914 F.2d 299, 305–06 (1st Cir. 1990).

Trinidad-García asserted counterclaims against Banco Popular, including for fraud in the inducement of the loan agreements and for breach of fiduciary duty in managing his portfolio. (AC ¶ 133.)  As with his FINRA arbitration claims, Trinidad-García's counterclaims challenge the creation of the SCLs and the management of his portfolio.  (*See* Ex. 6 (Counterclaims) ¶¶ 112–15, 117–19, 127.)[4]  This action is in the late stages of expert discovery.[5]

### 3.    The Parties' Unsuccessful Settlement Negotiations

Following protracted negotiations, the parties reached a settlement agreement in principle on July 24, 2021, subject to final documentation, which would have concluded all litigation between them.  (AC ¶ 170; *see also* Dkt. No. 7-1.)  But Plaintiffs refused to sign the agreement when it was reduced to writing, instead proceeding to litigate the FINRA arbitration to conclusion, while Trinidad-García continues to litigate his claims in the CFI.  (AC ¶ 299–301; *see also* Dkt. No. 7-1.)

### D.    Plaintiffs' Claims in This Action

Plaintiffs filed this action on November 4, 2021, shortly after FINRA issued its decision. Plaintiffs allege for the first time that their 2010 SCLs constitute an unlawful tying of credit to investment services in violation of the BHCA and seek total damages of nearly $280 million. (AC ¶¶ 199–234.)   These alleged damages include (1) the losses in Plaintiffs' investment portfolios, (2) the original balance of their SCLs, (3) interest paid on the SCLs, and (4) the "[l]oss of image and goodwill."  (AC ¶¶ 232–33, 242.)

Plaintiffs also assert supplemental state-law claims purportedly arising out of the

---

[4] A true and correct copy of the original Counterclaims in the Spanish language and, as required by Local Rule 5(c), a certified translation of the same are included within Exhibit 6.

[5] In addition to the FINRA arbitration and the Collections Action, Trinidad-García brought a separate action in the CFI in 2014, seeking injunctive relief against Popular, Banco Popular, and PSL (the "Injunction Action").   In November 2021, the CFI granted Defendants' motion to terminate the proceedings.  That decision is currently on appeal.  (AC ¶¶ 191–92.)

November 2010 agreements, management of their investment portfolios, and Defendants' alleged breaches of the settlement agreement Plaintiffs refused to sign and a stipulated judgment entered by the CFI in the Injunction Action.  (AC ¶¶ 245–312.)  Plaintiffs' state-law claims for "Fault in Causing the Loss in Value of the Pledge Collateral" and "Breach, Fault and Negligence in the Execution and Performance of Contract" are entirely duplicative, seeking to recover the same alleged damages as the BHCA claims.  (*Compare* AC ¶¶ 260, 266, 275 *with* ¶¶ 232–33.)

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).[6]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  The Court must "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true," but "can consider . . . implications from documents attached to or fairly incorporated into the complaint" and "facts susceptible to judicial notice."  *Schatz* v. *Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

## I.    *Res Judicata* Bars Plaintiffs' BHCA Claims and Duplicative State-Law Claims.

### A.    The FINRA Arbitral Award Precludes Plaintiffs' Claims.

"[A] final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action."  *Apparel Art Int'l, Inc.* v. *Amertex Enters. Ltd.*, 48 F.3d 576, 583 (1st Cir. 1995).  Accordingly, a plaintiff must "plead all factually related allegations and attendant legal theories for recovery the first time they bring suit," whether in court or in arbitration.  *Id.*  Because Plaintiffs' BHCA claims and duplicative state-law claims against Defendants were or could have been asserted in the FINRA

---

[6] Unless otherwise stated, all internal citations, brackets, and quotation marks are omitted from quotations.

arbitration,[7] *res judicata* bars those claims.

"Under federal law, a party asserting a *res judicata* defense must establish (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *FleetBoston Fin. Corp.* v. *Alt*, 638 F.3d 70, 79 (1st Cir. 2011).[8] All of these elements are satisfied here.

*First*, there is a final judgment on the merits in the FINRA arbitration: the arbitral award states that it is a "full and final resolution of the issues submitted," and a federal district court confirmed the award. (*See* Ex. 4 (Arbitral Award) at 5.) The First Circuit has held that a judicially confirmed arbitral award stating that it is a "full and final" resolution of all claims presented is "final as to the merits." *FleetBoston*, 638 F.3d at 80.

*Second*, Plaintiffs' claims in the FINRA arbitration and their claims here are identical for *res judicata* purposes because they "arise out of a common nucleus of operative facts." *Mass. Sch. of Law*, 142 F.3d at 38. In determining if causes of action are sufficiently identical for *res judicata* to apply, courts consider (1) "whether the facts are related in time, space, origin or motivation," (2) "whether the facts form a convenient trial unit," (3) "whether treating the facts as a unit conforms to the parties' expectations," and (4) "the nature of the injury for which the litigant seeks to recover." *Apparel Art*, 48 F.3d at 584. Plaintiffs' arbitrated claims and their BHCA claims and duplicative state-law claims here[9] arise from a common nucleus of operative facts: namely, the parties' November 2010 agreements creating the SCLs and the subsequent

---

[7] Federal courts do not have exclusive jurisdiction to hear BHCA claims. *Diversified Foods, Inc.* v. *First Nat'l Bank of Boston*, 785 F. Supp. 8, 10 (D. Me. 1992), *aff'd*, 985 F.2d 27 (1st Cir. 1993).

[8] Federal law applies because a federal district court confirmed the FINRA arbitral award. *See Apparel Art*, 48 F.3d at 583 & n.8.

[9] The duplicative claims include those for "Fault in Causing the Loss in Value of the Pledge Collateral," "Breach, Fault and Negligence in the Execution and Performance of Contract," and "Rescission."

management of Plaintiffs' investment portfolios pledged as collateral.  (*Compare* Ex. 5 (FINRA Statement of Claim) at 1.5–1.9, 10.1–10.6, 16.4–16.7, *with* AC ¶¶ 5, 212, 215, 245–77.)  The underlying facts are related in time, space, origin, and motivation and form a convenient unit, and treating them as a unit conforms to the parties' expectations.  Moreover, both the FINRA arbitration and this action seek rescission of the loan agreements[10] and recovery of damages for near-identical injuries.[11]  Because the arbitration and this lawsuit are "founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic [alleged] wrong[s], the two suits advance[] the same cause of action" for *res judicata* purposes.  *Kale* v. *Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991).

*Third*, the parties in both cases are likewise identical for *res judicata* purposes.  Plaintiffs and PSL were parties in both actions.  Although Banco Popular and Popular did not appear in the FINRA arbitration, "[c]orporate parents and subsidiaries are generally considered identical parties for claim preclusion purposes."  *Airframe Sys., Inc.* v. *Raytheon Co.*, 601 F.3d 9, 13 n.3 (1st Cir. 2010); *see also In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) ("[S]ister corporations under the control of a common parent" had a "corporate interrelationship" sufficient to satisfy third element of *res judicata*).  Banco Popular and PSL are both subsidiaries of Popular.  (AC ¶¶ 38, 41.)

Because each element of *res judicata* is satisfied, Plaintiffs' BHCA and duplicative state-law claims should be dismissed based on the FINRA arbitral award.[12]

---

[10] *Compare* Ex. 5 (FINRA Statement of Claim) ¶¶ 17.3–17.4 (claim for "rescission of all" transactions with Popular and "request[ing] the nullity of . . . the loans obtained"), *with* AC ¶ 277 (claim for "rescission" of all agreements with Popular and alleging "nullity" of the loans).

[11] *Compare* Ex. 5 (FINRA Statement of Claim) ¶¶ 16.6–16.7, 17.3, 20.2 (seeking damages for losses in investment portfolios, interest paid on loans, and full amount of loan balance), *with* AC ¶¶ 232–34 (same), 257–59, 265–66.

[12] Relying on *England* v. *Medical Examiners*, 375 U.S. 411 (1964), Plaintiffs assert that they made

### B.      Trinidad-García's Claims Were Compulsory Counterclaims in the Collections Action.

Trinidad-García could have brought his claims here, including his BHCA claims against Banco Popular, as counterclaims in the Collections Action.    Because those claims were compulsory counterclaims under Puerto Rico law, Trinidad-García is barred from asserting them here.    Rule 11.1 of the Puerto Rico Rules of Civil Procedure provides that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties [over] whom the court cannot acquire jurisdiction."    *Otero-Torres* v. *Collazo-Rivera*, 2010 WL 3087481, at *3 (D.P.R. Aug. 5, 2010) (quoting P.R. R. Civ. P. 11.1 (official translation)).    "If a compulsory counterclaim is not brought on time, defendant waives the cause of action that gives rise to it, and the claims and facts will be totally adjudicated, thus precluding the defendant from bringing a later claim arising out of the same occurrence."    *Neca Mortg. Corp.* v. *A & W Dev. S.E.*, 137 P.R. Dec. 860, 867 (1995) (official translation).    The purpose of this rule is to avoid precisely the type of multiplication of litigation that Plaintiffs are attempting through this duplicative, belated action.    *See id.* at 866.

Trinidad-García's claims here arise out of the same transaction or occurrence that is the subject matter of Banco Popular's claims against him in the Collections Action.    Trinidad-García

---

"express reserv[ations]" of their rights "to try before this Court the federal claim made in this Complaint." (AC ¶ 313.)  Even if the Court were to accept this conclusory assertion as true, the *England* reservation of rights doctrine applies only when a plaintiff first asserts claims in federal court and attempts to reserve its right to return to that court after the action is moved to state court on abstention grounds.  *See Geiger* v. *Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 67–68 (1st Cir. 2008); *Fuller Co.* v. *Ramon I. Gil, Inc.*, 782 F.2d 306, 312 (1st Cir. 1986) (*England* held only that "where a federal court remits a litigant asserting federal and state law claims to state court on abstention grounds for the purposes of resolving or clarifying an issue of state law, the litigant . . . may reserve its right to return to the federal court on the federal issues at the conclusion of the state proceedings").  That doctrine has no application here.

already has asserted other counterclaims in the Collections Action arising out of Banco Popular's loan to him and PSL's management of his securities portfolio, the subjects of his claims here. (*Compare* Ex. 6 (Counterclaims) ¶¶ 112–15, 117–19, 127, *with* AC ¶¶ 227, 232, 246–60, 277.) Yet Trinidad-García chose not to assert his BHCA and other state-law claims there. There also can be no claim that Popular and PSL are not subject to jurisdiction in the CFI. Because all of Trinidad-García's claims here were compulsory counterclaims in the Collections Action, they should be dismissed. *See*, *e.g.*, *R-G Fin. Corp.*, 381 F. Supp. 2d at 4 (federal claim barred where it was a compulsory counterclaim that could have been asserted in CFI).

## II.    Plaintiffs' BHCA Claims Are Untimely.

### A.    The Statute of Limitations Bars Plaintiffs' BHCA Claims.

Private claims for alleged violations of the BHCA's anti-tying provisions are subject to a four-year statute of limitations. 12 U.S.C. § 1977. Although Plaintiffs assert, with no supporting facts, that they learned of the purported violations in discovery in the Collections Action (AC ¶ 193), a BHCA cause of action accrues when the alleged tying conduct occurred, not when the conduct supposedly is discovered, *see Info. Exch. Sys., Inc.* v. *First Bank Nat'l Ass'n*, 994 F.2d 478, 484 (8th Cir. 1993); *Nesglo, Inc.* v. *Chase Manhattan Bank, N.A.*, 506 F. Supp. 254, 265 n.18 (D.P.R. 1980). Indeed, Plaintiffs concede that "[t]he statute of limitations for [their] BHCA action commenced to run in November 2010," when the parties executed the SCL agreements. (AC ¶ 198.) Thus, absent tolling, the statute of limitations bars Plaintiffs' BHCA claims.

### B.    There Is No Basis to Toll the Statute of Limitations.

Recognizing that their BHCA claims are untimely on their face, Plaintiffs assert several grounds for tolling the statute of limitations, none of which applies here.

**1.    The Statute of Limitations Was Not Tolled by the "Continuing Violation" Doctrine.**

Plaintiffs allege that the limitations period was tolled because Defendants engaged in a "continuing violation" of the BHCA's anti-tying provisions and a "continuing conspiracy" to violate those provisions.  (AC ¶¶ 90–91.)  While it has been applied to federal antitrust claims, the continuing violation doctrine has no application to the BHCA claims here.  As the Supreme Court explained, "in the case of a continuing violation, say, a price–fixing conspiracy that brings about a series of unlawfully high priced sales over a period of years, each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory period running again."  *Klehr* v. *A.O. Smith Corp.*, 521 U.S. 179, 189 (1997).  That doctrine does not apply here for two reasons.

*First*, the only alleged violation of the BHCA took place in November 2010, when the alleged unlawful tying—a discrete act—occurred through execution of the SCL agreements.  The notion that there was an ongoing violation or conspiracy that resulted in a series of unlawful overt acts continuing to this date has no basis in law.  The essence of a tying claim under the BHCA is a bank's unilateral requirement, at a single point in time, that a customer purchase tied services from the bank in exchange for credit.  *See* 12 U.S.C. §§ 1972(1), 1975.  Such a claim is not akin to a price-fixing conspiracy that results in a series of price-fixed transactions over the duration of the conspiracy, each of which is a separate unlawful act.  Unsurprisingly, no court has held that the continuing violation doctrine applies to BHCA tying claims.  Nor has any court recognized a private cause of action for conspiracy to violate the BHCA's anti-tying provisions that could even theoretically serve as the basis for a continuing violation:  no provision of the BHCA authorizes a conspiracy claim, and recognizing such a claim would upset the well-established rule that only banks, and not their employees or affiliates, are proper defendants in a BHCA tying action. *Ryan* v. *Illinois*, 1995 WL 516603, at *12 (N.D. Ill. Aug. 28, 1995) ("[T]he

Court will not allow Plaintiffs to reach natural persons under [Section 1972] by alleging a conspiracy between a bank and its own directors.").  Plaintiffs' theory also would be contrary to settled law that affiliated corporate entities cannot conspire with each other.  *Gonzalez-Maldonado* v. *MMM Healthcare, Inc.*, 693 F.3d 244, 249 (1st Cir. 2012).[13]

*Second*, even if the continuing violation doctrine were available, "the commission of a separate new overt act generally does not permit the plaintiff to recover for the injury caused by old overt acts outside the limitations period."  *Klehr*, 521 U.S. at 189.  As a result, Plaintiffs at most could recover only for injuries caused by acts alleged to have occurred within four years before filing this lawsuit—*i.e.*, after November 4, 2017.  Those acts are limited to:  (1) exercise of the legal process in the courts of Puerto Rico; (2) failure to pay court-ordered monthly installments to Trinidad-García; (3) liquidation of Trinidad-García's securities as a result of proceedings in the Injunction Action before the CFI; (4) breach of the unexecuted settlement agreement; (5) alleged perjury of a PSL employee during the FINRA arbitration; (6) retaining an attorney in the Injunction Action; and (7) refusing to transfer Plaintiffs' pledged collateral from PSL to another broker-dealer.  (*See* AC ¶¶ 128, 138–42, 154, 161–62, 168, 171, 177, 178.) Plaintiffs do not allege that any of these purported miscellaneous acts are the basis for their tying claims under the BHCA or that they caused the substantial damages Plaintiffs seek to recover here—the SCLs' original balance, losses in their investment portfolios, interest paid on their SCLs, and "loss of image and good will."  (AC ¶¶ 232–34, 241–42.)  Thus, even if it applied here, the continuing violation doctrine could not save Plaintiffs' BHCA claims.

---

[13] For the same reasons, the Complaint's second count—for Conspiracy in Violation of the BHCA—fails to state a claim as a matter of law.

## 2.    The Statute of Limitations Was Not Tolled by Fraudulent Concealment.

Plaintiffs alternatively seek to toll the statute of limitations based on fraudulent concealment.  (AC ¶ 194.)  Under that doctrine, Plaintiffs must "plead and prove three elements: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts."  *Berkson* v. *Del Monte Corp.*, 743 F.2d 53, 55 (1st Cir. 1984).  Allegations of fraudulent concealment must satisfy Rule 9(b)'s heightened pleading requirements.  *Epstein* v. *C.R. Bard, Inc.*, 460 F.3d 183, 189 (1st Cir. 2006).  Plaintiffs fail to plead any of these elements with the particularity required by Rule 9(b), much less all three of them.

*First*, Plaintiffs do not allege wrongful concealment by Defendants.  The Complaint instead simply asserts that "Defendants have obstructed Plaintiffs' efforts to achieve justice at every turn and have misused the judicial processes repeatedly."  (AC ¶ 194.)  That conclusory assertion fails to satisfy Rule 9(b)'s requirement that a complaint plead what information supposedly was concealed, when, where, and by whom.  *See Powers* v. *Boston Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991) (Rule 9(b) "entails specifying in the pleader's complaint the time, place, and content of the alleged false or fraudulent representations").

*Second*, Plaintiffs do not allege that they failed to discover the operative facts underlying their tying claims within the limitations period.  Plaintiffs were aware of all of the material facts underlying their BHCA claims when they signed the relevant agreements in November 2010— *i.e.*, they knew the terms of the arrangement that they now claim violated the BHCA's anti-tying provision.  *See Info. Exch. Sys.*, 994 F.2d at 484 (fraudulent concealment inapplicable where plaintiff knew of "condition[s] of continued credit . . . at the time they were imposed").  Indeed,

the terms of Plaintiffs' agreements here were similar, if not identical, to the terms to which they previously had agreed with Wachovia and other broker-dealers for SCLs.  At the very least, Plaintiffs were on inquiry notice of their BHCA claims before November 2014—four years after they signed the relevant agreements.  *See*, *e.g.*, *Philibotte* v. *Nisource Corp. Servs. Co.*, 793 F.3d 159, 164 (1st Cir. 2015) (no tolling where "sufficient facts . . . were available to place [plaintiff] on inquiry notice of fraudulent conduct from the time she entered into the agreement").

*Third*, Plaintiffs do not allege that they undertook any diligence to discover the operative facts within the limitations period.  Aside from the conclusory assertion that Plaintiffs learned of the purported violations in discovery in the Collections Action (AC ¶ 193), the Complaint does not allege that Plaintiffs exercised any diligence.  *See Truck Drivers & Helpers Union, Local No. 170* v. *NLRB*, 993 F.2d 990, 998 (1st Cir. 1993) ("Irrespective of the extent of the effort to conceal, the fraudulent concealment doctrine will not save a charging party who fails to exercise due diligence, and is thus charged with notice of a potential claim.").

### 3.    Excusable Neglect Is Not a Basis to Toll the Statute of Limitations.

Plaintiffs contend that their failure to file their BHCA claims in a timely manner was a result of "excusable neglect."  (AC ¶ 195.)  But that is not a basis for equitable tolling of the statute of limitations.  *See Irwin* v. *Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("[E]quitable tolling . . . do[es] not extend to what is at best a garden variety claim of excusable neglect."); *Matter of One (1) Vessel (Victoria) Registration No. PR-1268-AC*, 2021 WL 1784409, at *4 (D.P.R. May 4, 2021) ("[M]ere excusable neglect is not sufficient" for tolling). Instead, "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisc.* v. *United States*, 577 U.S. 250, 255 (2016).  The Complaint fails to allege that

Plaintiffs diligently pursued their rights or that extraordinary circumstances prevented them from timely asserting their BHCA claims. The same lawyers who represent Plaintiffs here have represented Trinidad-García in the FINRA arbitration and the Collections and Injunction Actions since April 2014, but Plaintiffs waited until November 2021—after FINRA issued its award—to assert BHCA claims. There is no justification for this multi-year delay.

## III.    The Complaint Fails to State a Tying Claim Under the BHCA.

To state a tying claim under the BHCA, "a plaintiff must allege that (1) the bank imposed an anticompetitive tying arrangement; (2) the arrangement was unusual in the banking industry; and (3) the practice benefitted the bank." *Mendez Internet*, 2009 WL 1392189, at *5. A plaintiff also must allege an injury incurred "by reason of" the tying violation. 12 U.S.C. § 1975. The Complaint fails to state a tying claim under the BHCA because it does not allege (1) an unlawful tying arrangement, (2) an arrangement that was unusual in the banking industry, and (3) injuries incurred by reason of the alleged tying violation.[14] Each is an independent ground for dismissal.

### A.    Plaintiffs Do Not Allege an Unlawful Tying Arrangement.

A tying arrangement is "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *N. Pac. Ry. Co.* v. *United States*, 356 U.S. 1, 5–6 (1958). To plead a tying arrangement under the BHCA, a plaintiff must allege two separate products—*i.e.*, that the defendant provided a tying product to the plaintiff only "on the condition or requirement" that the plaintiff also obtain a separate tied product from the defendant. *Figueroa Ruiz* v. *Alegria*, 896 F.2d 645, 649 n.3 (1st Cir. 1990).

---

[14] The Complaint's "Injunctive Relief" claim under the BHCA fails for another reason: "An injunction is not a cause of action, but a remedy." *Koufos* v. *U.S. Bank, N.A.*, 939 F. Supp. 2d 40, 46 (D. Mass. 2013); *see also, e.g.*, *Doe* v. *Brown Univ.*, 166 F. Supp. 3d 177, 197 (D.R.I. 2016); *Philips Med. Sys. P.R., Inc.* v. *Alpha Biomedical & Diagnostic Corp.*, 2020 WL 7029014, at *10 (D.P.R. Nov. 30, 2020).

Plaintiffs fail to plead an unlawful tying arrangement because they challenge only a single banking product—a securities-backed line of credit—not a tying product (credit) conditioned on the purchase of a separate tied product (investment services). Plaintiffs allege that Defendants violated three subsections of 12 U.S.C. § 1972(1): (1) Subsection (B), by requiring Plaintiffs to receive investment services from PSL as a condition of the SCLs; (2) Subsection (D), by requiring Plaintiffs to provide their investment portfolio to PSL as pledged collateral; and (3) Subsection (E), by prohibiting Plaintiffs from receiving investment services from a third party.[15] (AC ¶¶ 69, 200.) Even accepting these allegations, the transfer of Plaintiffs' investment portfolio to PSL, PSL's management of the portfolio, and Banco Popular's control of the portfolio for purposes of guaranteeing repayment of its SCLs were integral components of a single banking product—the SCLs—not separate tying and tied products.

To receive the SCLs, Plaintiffs executed PMA Contracts with Banco Popular that granted the bank a security interest on the collateral securities in order to secure all amounts owed under the SCLs. (Ex. 7 (PMA) at 9; Exs. 8 & 9 (PMA Attachments).)[16] They also executed Pledge Agreements that pledged their securities portfolios held in their PSL accounts as collateral for the loans. (Exs. 1 & 2 (Pledge Agreements) at 1–2.) The Pledge Agreements also gave Banco Popular control of the collateral to guarantee repayment of the SCLs: Banco Popular was not

---

[15] These subsections prohibit a bank from "extend[ing] credit . . . on the condition or requirement" that the customer (1) "obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company," 12 U.S.C. § 1972(1)(B); (2) "provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company," *id.* § 1972(1)(D); and (3) "shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit," *id.* § 1972(1)(E).

[16] Defendants are separately requesting leave to file these exhibits, as well as Exhibit 11, in their original Spanish language and a 30-day period within which to submit certified translations thereof, as required by Local Rule 5(c).

required to relinquish the collateral until Plaintiffs repaid the SCLs.  (*Id.*)  Beyond Banco Popular's control of the collateral to secure its loans, the Pledge Agreements did not bar Plaintiffs from engaging other investment advisers, obtaining banking services from other banks, or placing different investment portfolios at other firms.

The Federal Reserve recognizes that the BHCA permits a bank to require a "prospective borrower [to] provide the bank specified collateral in order to obtain the loan or to obtain the loan at a favorable interest rate" because, "[i]n such circumstances, the bank's conditions relate to the single product sought by the customer (a loan) and do not involve separate, distinguishable products."  Anti-Tying Restrictions of Section 106 of the Bank Holding Company Act Amendments of 1970, 68 Fed. Reg. 52,024, 52,029 (Aug. 29, 2003).  The Federal Reserve also has made clear that a bank can require that securities held as collateral for a loan be maintained at an affiliated broker-dealer like PSL as such "collateral does not represent a separate product distinguishable from the underlying credit product."  (Ex. 10 (Federal Reserve Letter) at 2.)[17]

The Federal Reserve's interpretation of the BHCA's anti-tying provisions is strong persuasive authority entitled to deference here.  *See Christensen* v. *Harris Cty.*, 529 U.S. 576, 587 (2000); *see also Skidmore* v. *Swift & Co.*, 323 U.S. 134, 140 (1944).  The Federal Reserve is vested with "broad regulatory authority" under the Bank Holding Company Act, and its guidance is the product of thoughtful consideration of the statute's text and legislative history, prior Federal Reserve regulations, and the nature of securities-backed loans.  *Board of Governors* v. *Dimension Fin. Corp.*, 474 U.S. 361, 365 (1986); *see also Skidmore*, 323 U.S. at 140 (setting out

---

[17] The Court may consider this letter because it is a public record available on the Federal Reserve's website at https://www.federalreserve.gov/boarddocs/legalint/bhc_changeincontrol/2004/20040202.  *See*, *e.g.*, *Gustavsen* v. *Alcon Labs., Inc.*, 272 F. Supp. 3d 241, 252 (D. Mass. 2017) (when considering a motion to dismiss courts can consider public documents, "includ[ing] material appearing on government websites"), *aff'd*, 903 F.3d 1 (1st Cir. 2018).

relevant factors for deference to agency interpretations).  Accordingly, the Court should follow the Federal Reserve's interpretation of the BHCA's anti-tying provisions and hold that the Complaint challenges only a single banking product, not an unlawful tying arrangement.

### B.    Plaintiffs Do Not Allege an Unusual Arrangement in the Banking Industry.

The BHCA "do[es] not interfere with the conduct of appropriate traditional banking practices." *B. C. Recreational*, 639 F.2d at 832.  A bank's imposition of protective measures for its extension of credit to a customer, including the requirement that a customer pledge collateral over which the bank has control, is a traditional banking practice permitted by the BHCA.  *See id.* at 832–33 (bank's conditions for extension of credit was traditional banking practice because it "was done in order to protect the Bank's investment"); *Nesglo*, 506 F. Supp. at 264 (BHCA "obviously . . . does not prohibit attempts by banks to protect their investments."); *Alpine Elec. Co.* v. *Union Bank*, 776 F. Supp. 486, 489 (W.D. Mo. 1991) ("The BHCA was not intended . . . to interfere with 'traditional banking practices' through which banks secure their loan portfolios."), *aff'd*, 979 F.2d 133 (8th Cir. 1992).

Plaintiffs have not plausibly alleged that the SCLs were an unusual banking practice.[18] To the contrary, the Complaint recognizes that the requirement that Plaintiffs pledge their investment portfolios as collateral for the SCLs was a protective measure intended to secure Banco Popular's substantial extensions of credit.  (AC ¶¶ 85, 124, 128.)  Plaintiffs previously had agreed to the same requirement with other broker-dealers before seeking SCLs from Banco Popular in November 2010.  Such a traditional banking practice does not violate the BHCA.

---

[18] The vast majority of the purportedly unusual practices alleged in the Complaint (*e.g.*, AC ¶¶ 204–05) are irrelevant to the purported tying arrangement, the sole "banking practice at issue."  *McClain* v. *S.C. Nat'l Bank*, 105 F.3d 898, 902 (4th Cir. 1997).  The "banking practice" purportedly giving rise to Plaintiffs' tying claims was the issuance of the SCLs to Plaintiffs "on the condition that they opened the PSLs investment accounts" and "transfer there from Wachovia their [securities portfolios] . . . to be used as Pledged Collateral of BPPR's SCLs."  (AC ¶ 215.)

The BHCA's legislative history shows that Congress did not intend to prohibit a bank from requiring that pledged collateral, including collateral in the form of securities, be held at the bank or its affiliate.   During floor debate on the amendment exempting traditional banking practices from the BHCA's prohibition on tying, a sponsor of the amendment, Senator Bennett, explained that "[i]t is customary, particularly, where a customer is borrowing up to the limit of his ability to pay, to require that during the term of the loan he should not borrow or pledge his assets elsewhere.  Such an arrangement is clearly required as a matter of sound banking."  116 Cong. Rec. 32125 (1970).[19]  The Senate Banking Committee's report accompanying the bill included Senator Bennett's criticisms of the BHCA's pre-amendment language on the ground that "a bank would be unable to give a lower rate loan to a person who deposited securities exceeding in value the amount of the loan than to a person who provided no such collateral, because it would be varying the cost of credit on the condition that the customer provide some other property to the bank."  S. Rep. No. 91-1084, 91st Cong., 2d Sess., 214 (Aug. 10, 1970).[20]

There can be no doubt that the alleged tying arrangement in this case is a widely used lending practice.   The SEC and FINRA have issued joint guidance for investors regarding securities-backed lines of credit that allow customers "to borrow money using securities held in [their] investment accounts as collateral."   Investor Alert: Securities-Backed Lines of Credit

---

[19] Courts have construed Section 1972 in accordance with Senator Bennett's views given his role in the amendment.  *See Nesglo*, 506 F. Supp. at 264 ("The wording in 12 U.S.C. Section 1972 follows Senator Bennett's Amendment which is to be judicially construed in accordance with his views.").

[20] Consistent with this legislative history, the Federal Reserve's guidance interpreting the BHCA permits banks to condition loans on the holding of securities pledged as collateral at an affiliated broker-dealer because "Congress was aware that banks customarily impose requirements on borrowers to mitigate the credit risk associated with loans (including restrictions designed to obtain and protect collateral pledged as security for loans)," and did not intend to "render such normal risk mitigation practices illegal." (Ex. 10 (Federal Reserve Letter) at 3.)  This guidance explains that a lender's requirement that a borrower place collateral at an affiliated broker-dealer protects the lender by allowing it to (1) "obtain detailed and timely information regarding the value of collateral," (2) "ensure that the collateral will be safeguarded and managed appropriately," and (3) "ensure that instructions with respect to the collateral will be executed promptly and consistently."  *Id.*

(Dec. 21, 2015), *available at* https://perma.cc/N2J5-MFGR (last accessed Mar. 16, 2021). This guidance recognizes that "[m]any brokerage firms offering SBLOCs do so through a bank affiliate" and that investors "likely have to pay off the[ir] loan" to move their investment portfolios to a different brokerage firm. *Id.*

Because the securities-backed SCLs at issue here were a single, commonly used secured lending product, not an unusual arrangement in the banking industry involving separate tying and tied products, the Complaint fails to plead either of the first two elements of a BHCA claim.

**C.    Plaintiffs Do Not Allege Injuries Suffered by Reason of Unlawful Tying.**

To state a claim under the BHCA, a plaintiff also must allege injuries suffered "by reason of anything forbidden in" the BHCA's anti-tying provisions. 12 U.S.C. § 1975; *see*, *e.g.*, *Campbell* v. *Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986) (affirming dismissal of BHCA claim because alleged damages were not a "direct consequence of the defendants' activities"); *Mid-State Fertilizer Co.* v. *Exch. Nat'l Bank of Chicago*, 693 F. Supp. 666, 669 (N.D. Ill. 1988) (plaintiffs failed to establish that their "losses were . . . caused by the purportedly illegal tying arrangement"), *aff'd*, 877 F.2d 1333 (7th Cir. 1989).

Plaintiffs seek to recover treble (1) the original balance of their SCLs, (2) the losses in value of their investment portfolios held at PSL, (3) all interest paid on their SCLs, and (4) "loss of image and good will." (AC ¶¶ 232–34, 241–42.) Plaintiffs do not allege, however, that the purported tying arrangement affected their SCLs' original balance, caused their investment losses, increased the interest rate they paid on their SCLs, or harmed their public image. Plaintiffs' investment losses were caused by downturns in the value of the Puerto Rican government bonds (AC ¶¶ 251–53, 258), and the Complaint does not allege that Plaintiffs paid more interest on their SCLs or agreed to a higher original balance because of the tying arrangement. *See McGarry & McGarry, LLC* v. *Rabobank, N.A.*, 847 F.3d 404, 406 (7th Cir.

2017) (affirming dismissal of BHCA claim where there was "no evidence" that fee paid for bank's services "was exorbitant, or that it would have been any lower" without the alleged tying arrangement).   Plaintiffs also cannot recover the original balance of their SCLs because the BHCA does not allow recovery of a loan's value.  *See Exch. Nat'l Bank of Chicago* v. *Daniels*, 768 F.2d 140, 144 (7th Cir. 1985) ("an obligation to pay back a loan actually made is not an injury" under the BHCA); *Bolduc* v. *Beal Bank, SSB*, 994 F. Supp. 82, 93 (D.N.H. 1998) (same).

## IV.    Popular and PSL Are Not Proper Defendants for a BHCA Claim.

The BHCA's anti-tying provisions apply only to a "bank."  12 U.S.C. § 1972.   The Complaint concedes that Popular is "a bank holding company," not a bank.  (AC ¶ 37.)  It is well settled that the BHCA's anti-tying provisions do not apply to bank holding companies.  *See*, *e.g.*, *Williams* v. *Porter Bancorp, Inc.*, 41 F. Supp. 3d 676, 681 (W.D. Ky. 2014).[21]  The Complaint also concedes that PSL is a "registered broker dealer," "not a bank company subject to the jurisdiction of the BHCA."  (AC ¶ 41, 66.)  The BHCA does not apply to broker-dealers.  *See Adelphia Recovery Tr.* v. *Bank of Am., N.A.*, 646 F. Supp. 2d 489, 495 (S.D.N.Y. 2009).  Although Plaintiffs contend that the purported tying arrangements are "actionable against PSL because . . . it aided and abetted and conspired" with Popular and Banco Popular to violate the BHCA (AC ¶ 33), the BHCA creates a private right of action only against primary violators, not for aiding and abetting or for conspiracy, *see* 12 U.S.C. § 1975.[22]  On Plaintiffs' theory, any

---

[21] In 1971, the Board of Governors of the Federal Reserve System extended the BHCA's anti-tying provisions to bank holding companies and their nonbank subsidiaries, but the Federal Reserve *rescinded* that regulation in 1997.  *See* 62 Fed. Reg. 9290, 1997 WL 81850 (F.R.) (Feb. 28, 1997).

[22] Although the BHCA authorizes penalties for entities that aid and abet a tying violation in actions brought by the *government*, no such language is found in the provision authorizing lawsuits by *private parties*.  *Compare* 12 U.S.C. § 1972 (2)(F)(i)-(viii), *with* 12 U.S.C. §§ 1972(1), 1975; *see also Nken* v. *Holder*, 556 U.S. 418, 430 (2009) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

natural person or non-bank could be sued under Section 1972 as an aider and abettor or co-conspirator, yet it is well established that BHCA liability does not extend to such defendants. *See*, *e.g.*, *Ryan*, 1995 WL 516603, at \*12. Thus, because neither Popular nor PSL is a "bank," the BHCA claims against them fail as a matter of law. *See Leon* v. *RG Premier Bank of P.R.*, 2013 WL 12234676, at \*3 (D.P.R. Sept. 5, 2013).

## V.    Plaintiffs' Claims Against PSL Are Subject to Mandatory Arbitration.

Plaintiffs' claims against PSL also should be dismissed because they are subject to a mandatory arbitration clause. To compel arbitration, the movant "must demonstrate that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *Soto–Fonalledas* v. *Ritz–Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011). "[W]here the parties have agreed to arbitrate," the Federal Arbitration Act "requires courts to rigorously enforce arbitration agreements according to their terms." *Bossé* v. *N.Y. Life Ins. Co.*, 992 F.3d 20, 27 (1st Cir. 2021).

PSL and Plaintiffs are bound by a valid arbitration agreement. Under their investment services contracts with PSL, Plaintiffs broadly agreed to resolve in arbitration any dispute that may arise between them and PSL, including any dispute regarding their accounts with PSL. (*See* Ex. 11 (Brokerage Account Customer Agreement) at 1, 5; AC ¶ 64.) Plaintiffs' claims here clearly fall within the scope of that broad arbitration clause. Indeed, their claims are identical for *res judicata* purposes to those already resolved in the prior FINRA arbitration. Accordingly, if the Court does not dismiss the claims against PSL on other grounds, the Court should compel arbitration of those claims.[23]

---

[23] Because the "arbitrable claims are inextricably entwined with the non-arbitrable claims," if the Court refers Plaintiffs' claims against PSL to arbitration, it should stay Plaintiffs' claims against Banco Popular

## VI.    The Court Should Decline to Exercise Supplemental Jurisdiction Over Any State-Law Claims That Are Not Dismissed on the Merits.

If the Court dismisses Plaintiffs' BHCA claims—the only claims here arising under federal law—the Court should decline to exercise supplemental jurisdiction over any of Plaintiffs' state-law claims that are not otherwise dismissed.  *See* 28 U.S.C. § 1367(c)(3).  "[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that federal cause of action is [dismissed], the pendent state claims should be dismissed" as well.  *Rivera* v. *Murphy*, 979 F.2d 259, 265 (1st Cir. 1992).[24]

Alternatively, the Court should abstain from hearing Plaintiffs' state-law claims under *Colorado River Water Conservation District* v. *United States*, 424 U.S. 800 (1976), which permits a federal court to dismiss or stay state-law claims where parallel litigation is pending in state court.  Proceedings are parallel if the two suits "involve substantially the same parties who are litigating substantially the same issues," but an exact identity of parties or issues is not required.  *Martinez-Rosado* v. *Instituto Medico Del Norte*, 145 F. Supp. 2d 164, 170 (D.P.R. 2001); *see also Valle-Arce* v. *P.R. Ports Auth.*, 585 F. Supp. 2d 246, 251 (D.P.R. 2008) (suits parallel where both "arise from the same actions; the claims are substantially the same; the allegations and issues are similar; and the remedies being sought are nearly identical").  The following factors are relevant to *Colorado River* abstention:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal

---

and Popular pending conclusion of the arbitration.  *Roman* v. *UBS Fin. Servs., Inc. of Puerto Rico*, 2017 WL 3608238, at *7 (D.P.R. Aug. 21, 2017) ("In instances where a case involves both arbitrable and non-arbitrable claims, whether the non-arbitrable claims should be stayed pending resolution of the arbitrable claims is generally discretionary with the court.").

[24] Because Plaintiffs' state-law claims for punitive damages and attorney's fees and costs are remedies, not standalone causes of action, they should be dismissed for failure to state a claim.  *See, e.g., S. Port Marine, LLC* v. *Gulf Oil Ltd. P'ship*, 234 F.3d 58, 64 (1st Cir. 2000); *Fisk* v. *Mid Coast Presbyterian Church*, 2017 WL 1755950, at *2 (D. Me. May 4, 2017).

litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Rio Grande Cmty. Health Ctr., Inc.* v. *Rullan*, 397 F.3d 56, 71–72 (1st Cir. 2005).

The Collections Action and this case are parallel actions because both involve substantially the same parties—Banco Popular and Trinidad-García—and the state-law claims in both matters "arise from the same factual origin" (the creation of the SCLs and the management of the PSL investment portfolios) and seek the same relief. *H & R Block Tax Servs., Inc.* v. *Rivera-Alicea*, 570 F. Supp. 2d 255, 267 (D.P.R. 2008). The same *res*—the SCLs and Trinidad-García's investment portfolios—is at issue in both actions, *Jimenez* v. *Rodríguez-Pagan*, 597 F.3d 18, 28 (1st Cir. 2010), and piecemeal litigation could be avoided because the Collections Action may "moot or otherwise inform" this action, *Currie* v. *Grp. Ins. Comm'n*, 290 F.3d 1, 3 (1st Cir. 2002). The Collections Action also was commenced nearly eight years ago; the parties have spent substantial time and money litigating that case; and no one can contend that the CFI is inadequate to protect the parties' interests. Finally, there is reason to suspect the vexatious or contrived nature of the BHCA claims asserted here: Disappointed with the FINRA arbitral award, Plaintiffs repackaged their claims in a *third* attempt at recovering significant damages. *See Rio Grande*, 397 F.3d at 72 (suit filed in "reaction to an adverse state court action" would "weigh[] heavily in favor of abstention"). Because these factors weigh decisively in favor of abstention, the Court should dismiss the state-law claims for this reason as well.

## CONCLUSION

**WHEREFORE,** Defendants respectfully request that the Court dismiss Plaintiffs' BHCA claims and duplicative state-law claims with prejudice for failure to state a claim and decline to exercise supplemental jurisdiction over any remaining state-law claims.

Dated: March 21, 2022

Respectfully submitted,

**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

/s/ Richard C. Pepperman II
*Pro hac vice* application pending
peppermanr@sullcrom.com

/s/ Benjamin R. Walker
*Pro hac vice* application pending
walkerb@sullcrom.com

/s/ Jared H. Rosenfeld
*Pro hac vice* application pending
rosenfeldj@sullcrom.com


**PIETRANTONI MÉNDEZ & ALVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de León Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 773-6000
Facsimile: (787) 274-1470

/s/ Néstor M. Méndez-Gomez
USDC-PR Bar No. 118409
nmendez@pmalaw.com

/s/ María D. Trelles-Hernández
USDC-PR Bar No. 225106
mtrelles@pmalaw.com

/s/ Christian A. Muñoz Lugo
USDC-PR Bar No. 305813
cmunoz@pmalaw.com

*Attorneys for Defendants Popular, Inc., Banco*
*Popular de Puerto Rico, and Popular Securities LLC*

- 26 -

**CERTIFICATE OF SERVICE**

I, Christian A. Muñoz Lugo, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all attorneys of record.

/s/ Christian A. Muñoz Lugo
USDC-PR Bar No. 305813
cmunoz@pmalaw.com
