### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Juan Felix Trinidad-Garcia and Juan Felix Trinidad-Rodriguez,<br><br>     **Plaintiffs,**<br><br>     **vs.**<br><br>Popular, Inc.; Banco Popular de Puerto Rico; Popular Securities LLC; and Insurance Companies 1-3,<br><br>     **Defendants** | Civil Action No. 21-1529 (ADC)<br><br>**Under Bank Holding Company Act, Puerto Rico Pendent Claims for Fault in Causing the Loss in Value of the Pledge Collateral, For Breach of Contract, Request for Specific Compliance and/or Damages, Pre-Contractual Fault and Damages**<br><br>**JURY TRIAL DEMANDED** |

### OPPOSITION TO MOTION TO DISMISS THE AMENDED COMPLAINT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Juan Felix Trinidad-Garcia and Juan Felix Trinidad-Rodriguez,** | **Civil Action No. 21-1529 (ADC)** |
| **Plaintiffs,** | **Under Bank Holding Company Act, Puerto Rico Pendent Claims for Fault in Causing the Loss in Value of the Pledge Collateral, For Breach of Contract, Request for Specific Compliance and/or Damages, Pre-Contractual Fault and Damages** |
| **vs.** | |
| **Popular, Inc.; Banco Popular de Puerto Rico; Popular Securities LLC; and Insurance Companies 1-3** | **JURY TRIAL DEMANDED** |
| **Defendants** | |

## OPPOSITION TO MOTION TO DISMISS THE AMENDED COMPLAINT

I.    INTRODUCTION ............................................................................................................... 1

II.   RELEVANT BACKGROUND ........................................................................................... 2

III.  ARGUMENT ...................................................................................................................... 3

   1.  Standard Under Fed. R. Civ. P. 12(b)(6) ...................................................................... 3

   2.  The Well-Pled Facts State A Tying Claim Under The BHCA........................................ 4

      A.  The Trinidads' well-pled unlawful tying arrangements. .......................................... 4

      B.  The Trinidads' well-pled unusual banking practices................................................ 6

      C.  The Trinidads' well-pled injuries to their property. ................................................ 8

   3.  The BHCA Authorizes The Conspiracy Claim ............................................................. 9

   4.  The BHCA And PR-Law Claims Are Not Barred by *Res Judicata* ............................ 11

      A.  There is no strict factual identity between the asserted claims................................. 12

      B.  There is no sufficient identicality between PSL and BPPR/BPOP. .......................... 14

      C.  That the claims were not asserted as compulsory counterclaims in the Commonwealth action is immaterial. ....................................................................................................... 14

   5.  Plaintiffs' BHCA Claims Are Timely............................................................................ 15

      A.  The "continuing violation" doctrine........................................................................ 15

      B.  Popular's argument that the AC alleges a single violation is spurious. .................... 16

         (1)  The tying arrangement of November 2010 (AC, § VII). ................................... 16

         (2)  The Continuing Tying Violation and Tying Conspiracy (AC, § VIII). .............. 17

   (3) The ongoing and uninterrupted acts of aiding and abetting (AC, § IX). ........................ 17

   (4) The continuing overt acts (AC, § X). .................................................................... 17

  C. The Trindads are entitled to recovery for all violations ............................................ 18

  D. The limitations defense is premature. ..................................................................... 18

 6. Popular And PSL Are Proper Defendants ...................................................................... 18

 7. The Claims Against PSL Are Not Subject to Mandatory Arbitration ............................... 19

 8. The Court Should Exercise Its Supplemental Jurisdiction ............................................. 20

IV. CONCLUSION ..................................................................................................................... 22

**TO THE HONORABLE COURT:**

**COME NOW,** by and through the undersigned Counsel, Plaintiffs, Juan Felix Trinidad-Garcia ("Trinidad-Garcia") and Juan Felix Trinidad-Rodriguez ("Trinidad-Rodriguez") (collectively the "Trinidads" or "Plaintiffs"), to oppose, on the basis of the reason set forth below, the Motion to Dismiss ("MTD") filed by Defendants, Popular Inc. ("BPOP"), Banco Popular de Puerto Rico ("BPPR") and Popular Securities, LLC ("PSL") (collectively the "Popular Entities" or "Defendants"):

## I.     INTRODUCTION

The Trinidads brought this action against BPOP and its subsidiaries, BPPR and PSL, pursuant to the Bank Holding Company Act ("BHCA"). *See* Docket Entry ("DE") # 1. The Amended Complaint ("AC") alleges that on **November 18, 2010**, BPOP, BPPR and PSL conspired (henceforth the "Tying Conspiracy") and aided and abetted one another to devise a tying arrangement scheme where BPPR was to extend securities backed credit lines ("SBCL") and other banking services to the Trinidads on the condition that they transfer all the investment accounts they had in Wachovia to PSL and continue to obtain additional investment services and products exclusively from PSL (henceforth the "Tying Arrangement"). The tying of the securities products and services to the banking products and services constitutes a violation of the BHCA (henceforth the "Tying Violation"). It is further alleged that, continuously since **November 2010** and up to the filing of this action, the Popular Entities, through Popular One: (i) kept the Trinidads' pledged and non-pledged investment accounts tied at PSL; (ii) precluded them from selling any securities at PSL to make any substantial payments to reduce or pay off the balance owed by the SBCLs; and, (iii) precluded them from moving their investment accounts from PSL to any of its competitors. By reason of the ongoing Tying Violation, the Trinidads have sustained continuous injuries to their property consisting in substantial losses in value of their assets invested at PSL and of their pledged collateral under the control of BPPR, as well as injuries to the value of their commercial public image and goodwill.

1

Plaintiffs also invoke this Court's supplemental jurisdiction to try pendent claims against Defendants under the Puerto Rico ("PR") laws for contractual fault, fault in causing losses in value of the pledged collateral, breach of contract, specific compliance thereof, fault in pre-contractual negotiations, mental and emotional anguish and distress, and punitive damages.

The MTD (DE # 17) is groundless and should be denied for the following reasons. First, the AC states a viable claim for relief under the BHCA against BPPR because it extended the SBLCs to the Trinidads on the conditions that they transfer ***all*** their investment accounts at Wachovia to PSL and ***obtain additional investment services and products exclusively from PSL***; and, against BPOP and PSL because they are tortfeasors, aiders and abettors and co-conspirators, jointly with BPPR, in the latter's violation of the BHCA. Second, the *res judicata* defense is inapplicable since there is insufficient identicality between the causes of action and the parties in the two actions. The BHCA claims asserted herein could not have been brought in the prior action and BPOP and BPPR were not parties thereto. Third, the BHCA claim is not time-barred because the Tying Violation is still ongoing. Fourth, the claims against PSL are not subject to mandatory arbitration because they do not derive from any disputes concerning the Trinidads' securities business relationship with PSL. Fifth, since there is federal jurisdiction under the BHCA, this Court should exercise its supplemental jurisdiction over the PR-law claims that arise under the same nucleus of operative facts. Sixth, Popular has failed to meet the extraordinary circumstances required for the application of the *Colorado River* abstention doctrine as to these pendent claims.

## II.    RELEVANT BACKGROUND

**The Prior Litigation**. The Trinidads sued BPPR and BPOP in the FINRA action, but they did not appear therein. Moreover, FINRA did not have compulsory jurisdiction over BPPR or BPOP because they are not broker dealers registered with it. *See* FINRA R. 12200. The Panel expressly found that "[BPPR] did not file a Statement of Answer or sign the Submission Agreemen", "is not a member or associated person of FINRA and did not voluntarily submit to arbitration. Therefore, the Panel made

no determination with respect to the claims against [BPPR]". (Ex. 4 to MTD - Arbitral Award, at pp. 3-4).

**The Commonwealth Collections Action.** On **November 10, 2021**, the Trinidads filed in that action an express reserve to try before this Court their BHCA claims. *See* AC, ¶ 313; *see also England v. Medical Examiners*, 375 U.S. 411 (1964).

**The Unsuccessful Settlement Negotiations.** Plaintiffs have well pled that, as part of the continuous Tying Violation, Defendants tried to impose upon them arbitrary and non-agreeable conditions, and engaged in other bad faith negotiation tactics that obstructed, derailed and breached the execution of the Settlement Agreement. Plaintiffs filed these allegations under seal in a separate Confidential Appendix. They are incorporated by reference herein. *See* AC, ¶¶ 171-173 and DE 7-1.

### III.    ARGUMENT

### 1.  Standard Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal,* 556 U.S. 662, 668 (2009). To set forth "a plausible entitlement to relief," the complaint must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan,* 513 F.3d 301, 305 (1st Cir. 2008). "Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]'" *Ocasio-Hernandez v. Fortuño- Burset,* 640 F.3d 1, 11–12 (1st Cir. 2011). "At the Rule 12(b)(6) stage, then, it is enough for a plaintiff to sketch a scenario which, if subsequently fleshed out by means of appropriate facts, could support an actionable claim." *Garrett v. Tandy Corp.,* 295 F.3d 94, 105 (1st Cir. 2002). A cursory reading of the pleadings in the AC readily reveals that they state facially plausible claims against the Popular Entities under the BHCA and PR-laws.

### 2. The Well-Pled Facts State A Tying Claim Under The BHCA

"To state a claim under § 1972, a plaintiff must allege that (1) 'the bank imposed an anticompetitive tying arrangement; (2) the arrangement was unusual in the banking industry; and (3) the practice benefitted the bank." *Mendez Internet Mgmt. Servs., Inc. v. Banco Santander de P.R.*, 2009 WL 1392189 (D.P.R. 2009). A plaintiff also must allege an injury incurred "by reason of" the tying violation. *See* 12 U.S.C. § 1975.

### A. The Trinidads' well-pled unlawful tying arrangements.

The BHCA prohibits BPOP, through BPPR, to "extend credit" or "furnish any [banking] service" to the Trinidads "on the condition or requirement" that they: (1) "***obtain some additional … service*** from [PSL]" (here, the management of their investment accounts by PSL); (2) "***provide some additional … property***" (here, their investment accounts for the management and the payment of fees and commissions) "to … [PSL];" and, (3) "***not obtain [the] service***" (here, the securities management), "***from a competitor***" of [PSL]." § 1972(1)(B), (D) and (E). (Emphasis added). The BHCA also forbade BPPR to use its ability to offer the SBLC in a coercive manner to gain a competitive advantage by its affiliate PSL for other products and services in the securities market. It expressly prohibited BPPR from requiring, as part of its extension of the SBLC (the "desired product"), that the Trinidads transfer their non-pledged investment accounts to PSL, and that they receive the investment management services for those accounts only from PSL (the "tied service or product"). *Id.*

The Trinidads pled with sufficient particularity in ¶¶ 69 to 89 of the AC the acts of aiding and abetting perpetrated by each of the Popular Entities that form part of the Tying Violation and the manner in which each acted in concert to carry it out, including the identity of such participants, what transpired during their concerted actions, and on or about when and where their concerted acts occurred. The Trinidads challenge therein the extension of the SBLCs by BPPR conditioned on the fact that they receive the tied securities management services exclusively from PSL ***for all their investment accounts*** at Wachovia; and that they provide property to PSL, consisting of their

4

investment accounts securities for PSL's management, and the monetary disbursements in fees and commissions paid to PSL for those services.

The Popular Entities incorrectly argue that the Trinidads challenge only a single SBLC banking product. The AC well pleads the tying of securities products and services to the banking product and a contiuous Tying Violation. See AC, ¶¶ 90-192. Defendants further argue that the transfer of Plaintiffs' investment portfolios to PSL for its management was a component of the single SBLC product. The argument is false. ***Investment products are not traditional banking products of deposits or obligations.*** BPOP and BPPR are, respectively, a bank holding company and a bank regulated by the FDIC-FRB -- not "registered broker dealers" nor "member[s] of FINRA." As such, they were precluded from providing any securities management, advice or services to Plaintiffs. Therefore, the tied securities services cannot be considered part of the SBLC product. It was due to that prohibition that the Popular Entities, through Popular One,[1] imposed upon the Trinidads the tying condition that they obtain those secondary services from PSL, a registered broker dealer and a subsidiary that BPOP uses to provide those services. *See* AC, ¶ 47.

Defendants argue that the Court may consider as persuasive authority a letter issued by a General Counsel ("GC") of the Federal Reserve construing the application of the BHCA's anti-tying prohibition to a SBLC. However, the GC's opinions in that letter are inapplicable here because they were "based on the specific facts and representations [] provided, and any material change in these facts or representations could result in a different conclusion;" and, under that scenario, the bank customers were "not obligated to trade in the collateral accounts or any other accounts or to purchase any other products or services" from any affiliate, "[nor] restricted in their ability to maintain brokerage accounts with other securities firms not affiliated with" the bank, and "not required to trade or deposit excess securities."[2]

---

[1] "Popular One is an integrated services platform" through which the services of PSL and BPPR are jointly offered and provided to Popular's high net worth clients. *See* n. 10, *supra.*
[2] *See* https://www.federalreserve.gov/boarddocs/legalint/bhc_changeincontrol/2004/20040202.

Here, to the contrary, it is well pled in the AC that Defendants "acquired"[3] the Assets Under Management ("AUM") of José Ramos at Wachovia, with an approximate value of $54,000,000, including the Trinidads' joint gross assets of $48,581,507; and that, as part of that acquisition, Defendants extended the *desired credit* to Plaintiffs on the *additional tied conditions* that they deposit with PSL *all* their investment securities accounts, including those in excess of the required collateral, receive from PSL the investment management services for those accounts, and do not obtain those investment services from a competitor of PSL. *See* AC, ¶¶ 69, 73, 86-88. The tied securities management products and services *could not form part of a single banking product* because the arrangement required PSL's management of the Trinidads' non pledged securities accounts that did not form part of the SBLCs. It is also well pled that Defendants had *de facto day-to-day control* and management of Plaintiffs' securities at PSL and the balance of the SBCLs at BPPR and *used that control to maintain the Trinidads' PSL's investment accounts tied to the SBLCs* by precluding them from selling any securities at PSL to make substantial payments to reduce or pay off the balance of the SBLC; and, *to preclude them from moving their investment accounts to any of PSL's competitors*. *Id.,* ¶¶ 5, 104-105. These differences show the existence of tying violations that were not considered in the GC's opinion and which precisely are the types of anti-competitive misconduct that the BHCA was intended to prevent.

The allegations of the AC, therefore, suffice to comply with FRCP 12(b)(6)'s pleading standard to show enough factual matter that, if accepted as true, does state a claim that is plausible on its face to obtain relief against the Popular Entities for the continuous Tying Violation arising under § 1972(1)(B), (D) and (E) of the BHCA. *See Ashcroft, supra.*

### B.  The Trinidads' well-pled unusual banking practices.

The AC well alleges the unusual arrangement by which BPOP, through the "one-stop platform" of the Popular One Office, had its subsidiary BPPR provide banking services to the Trinidads, on the

---

[3] The verb to "acquire" means "to get or buy something." https://dictionary.cambridge.org/us/dictionary/english/acquire.

condition that they obtain the tied investment advice and services from its subsidiary PSL. *See* AC, ¶ 203. This arrangement constituted an unusual cross-selling of services to gain a competitive advantage and is, *per se*, a violation of the BHCA. *Id.* The AC also well pled the unusual circumstances and practices by which Defendants granted and conditioned the extension of credit to the Trinidads, without their request, knowledge or participation. *Id.,* ¶¶ 5, 69, 73 and 86-88.

The acquisition by the Popular Entities of the Trinidads' non-pledged accounts, which was imposed as a condition to extend them the desired credit, constitutes a ***highly unusual banking practice*** because ***those non-pledged accounts were unrelated to, and did not form part of the SBLC product*** provided by BPPR. That Defendants imposed the condition whereby PSL was to manage ***all Plaintiffs' investment accounts*** transferred there from Wachovia is shown by their agreement to pay Ramos the **$510 k**, upon the transfer to PSL of ***all*** his AUM, of which around **90%** came from Plaintiffs' non-pledged and pledged accounts. BPPR is ***not engaged in the business of*** acquisition of AUMs from financial advisors for the management of its affiliate PSL. These tied investment services and products are precisely "the bank services covered by the prohibitions" because they are "unrelated to traditional banking (*i.e.,* data processing, insurance, travel agencies and others)." *Nesglo, Inc. v. Chase Manhattan Bank, N.A.*, 506 F. Supp. 254, 264 (D.P.R. 1980).

Defendants neglected to address these well-pled facts that show numerous failures to comply with accepted banking standards and practices, as well as BPPR's own policies in the extension of the SBLCs to the Trinidads, all of which made the whole arrangement a highly unusual one in the banking industry. *See and cf., Mendez Internet, supra; Martinez-Rosado v. Instituto Medico Del Norte*, 145 F. Supp. 2d 164, 169-70 (D.P.R. 2001). Defendants violated § 1972 when they took competitive advantage in extending the credit to the Trinidads by making the transaction conditional on them receiving from PSL the unrelated, non-traditional banking services. *See Nesglo, Inc., supra*.

## C. The Trinidads' well-pled injuries to their property.

Pursuant to 12 U.S.C.A. § 1975, "[a]ny person who is injured in his business or property by reason of anything forbidden in section 1972 … shall be entitled to recover three times the amount of the damages sustained by him, and the cost of suit, including a reasonable attorney's fee." In *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268 (1992), the Court construed the similar language of the RICO Act to contain both, "but-for causation and proximate causation requirements." *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 34 (1st Cir. 2013). The "proximate causation" question looks at the chain of events between the Tying Violation and the injuries claimed to have been sustained. The "but-for" causation question looks at whether, absent the Tying Violation, the claimed injuries would not have been sustained. *Id.* In its review, the Court must consider that an expansive interpretation of § 1972's scope is required to achieve "the important public policies of compensation and deterrence" that led to its enactment. *See The Anti-Tying Provision: Its Potential Is Still There*, Timothy D. Naegele, The Banking Law Journal, Volume 100, Number 2 (February 1983).

The AC well pleads that Defendants breached the legal duties they owed Plaintiffs when, to maintain the ***ongoing tying conditions****,* they failed to take any action to prevent the foreseeable deterioration and loss in value of the pledged collateral which was under their absolute management and control. *See* AC, ¶¶ 6, 105-6, 111, 247, 256-258;[4] and 19 L.P.R.A. § 2237.[5] As per the loss calculations made, Trinidad-Garcia and Trinidad-Rodriguez have sustained injury to their property in no less than **$74,559,206** and **$18,659,086**, respectively. *Id.,* ¶¶ 232-34. Therefore, the AC well pleads that the property injuries claimed by the Trinidads were ***"proximately caused" by***, and would have not been sustained ***but for, the ongoing tying conditions***. *See In re Neurontin Mktg., supra.*

---

[4] The losses claimed by the Trinidads are not the repayment of the SBLCs, but the losses to their securities portfolios that the Popular Entities held under their absolute control.

[5] Pursuant to § 2237 "a secured creditor must exercise reasonable care in the custody and preservation of the encumbered property in its possession". *Id*. This statute imposed upon the Popular Entities the fiduciary duty to monitor and make changes, as needed, to protect and preserve the integrity of the pledged property managed by PSL. PSL also had a fiduciary duty to do so. *See* OCFI Regulation 6078, Sec 25.1-25.3.

### 3.  The BHCA Authorizes The Conspiracy Claim

The express terms of the BHCA imply that it contemplates a conspiracy claim. Section 1972 prohibits tying concerted conduct between a bank and an affiliate subsidiary of the bank's holding company that violates the Act. For purposes of the BHCA, the term to "violate," "includes any action (alone or with another or others) for or toward causing, bringing about, participating in, counseling, or aiding or abetting a violation." 12 U.S.C.A. § 1972(2)(F)(vii). Thus, a violation of the Act occurs by the Popular Entities' acts of aiding and abetting of BPOP, BPPR and PSL and the conspiratorial agreement between them aimed "towards causing" or "bringing about" the proscribed tying arrangements. Under PR law, a cause of action for civil conspiracy for the violation of the BHCA arose when BPOP, BPPR and PSL agreed to impose the proscribed tying conditions and when, to carry out the agreed purpose, any of them performed any overt act that caused injury. *See Seda Delgado v. De Jesus Reyes,* 2018 WL 3855145 (P.R. Cir. 2018).[6] That conspiratorial misconduct is precisely the kind that § 1972 expressly prohibits.

Defendants argue that § 1972(2)(F)(vii)'s prohibition only applies to banks in the governmental enforcement action of the BHCA. The argument has no legal support. By its express terms, § 1975 created a private civil action to obtain recovery by "[a]ny person who is injured in his business or property **by reason of anything forbidden in section 1972**" (emphasis added). The BHCA must be construed to authorize a private action for the civil conspiracy to violate the Act since §1972 expressly prohibits BPPR (a bank) from acting in concert with BPOP (its holding company) and PSL (its banking holding company's affiliate) for the proscribed purposes. *See* § 1972(2)(F)(vii), *supra*.[7]

The BHCA applies to BPPR because it is a bank. It applies to PSL and BPOP because, as coconspirators, they do not have to be a bank to violate the BHCA. Since BPOP, BPPR and PSL are

---

[6] "The elements of an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage resulting to plaintiff (3) from a wrongful act done in furtherance of the common design." *Id.*

[7] *Ryan* v. *Illinois*, 1995 WL 516603 (N.D. Ill. 1995), cited in the MTD, at p. 23, is innaposite here because the AC does not allege any conspiracy between BPPR, BPOP, PSL and any natural persons, but among themselves. *See* § V of the AC*; see also* 19 C.J.S. Corporations § 673.

9

legal entities, they "can only act through [their] officers and employees, and those acts are attributed to the corporation under basic principles of agency." (Citations omitted) 19 C.J.S. Corporations § 673. "[I]t is long settled … that separately incorporated organizations are separate legal units with distinct legal rights and obligations.". *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2087 (2020). "Affiliated corporations, where they constitute separate legal entities, may be liable as coconspirators although, generally, true parent and subsidiary corporations may not be viewed as separate parties for purposes of a conspiracy action because a corporation cannot conspire with its own division. However, there is no *per se* rule that a corporation and its wholly owned subsidiary are immune from civil conspiracy claims." (Internal citations omitted). 1 Summ. Pa. Jur. 2d Torts § 13:20 (2d ed.). Accordingly, to establish the alleged violations by PSL and BPOP, it is sufficient to show that they acted as joint tortfeasors and conspired with BPPR to violate the Act.

Defendants' reliance on *Gonzalez-Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 249 (1st Cir. 2012) is misplaced. There, the Court quoted text from *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752 (1984), where "the Supreme Court held that a corporation and its wholly owned subsidiary 'have a complete unity of interest,' and as a single economic unit cannot violate section 1's conspiracy prohibition [of the Sherman Act]," finding that "[t]he rationale and underlying policy apply with equal force to sister corporations that are wholly owned subsidiaries of the same parent." 693 F.3d, at 249. In the case of *Shared Commc'ns Servs. of 1800-80 JFK Blvd. Inc., v. Bell Atl. Properties Inc.*, 692 A.2d 570, 572-73 (Pa. 1997), the Court clarified "Copperweld's specific holding, that a parent cannot conspire with its wholly owned subsidiary, was expressly limited to the Sherman Antitrust Act context;" and expressly rejected Defendants' argument that said holding should equally apply in the common law conspiracy context.[8] Here, on the contrary, Congress expressly prohibited intra-corporate concerted action in the BHCA when it proscribed "any action (alone or with

---

[8] "We find no compelling reason, however, to justify a similar *per se* rule ignoring legal corporate form in the common law conspiracy context." *Id.,* at 573.

another or others)" between BPOP, BPPR and PSL, or between BPPR and PSL for the purposes prohibited by the Act. *See* 12 U.S.C.A. § 1972(2)(F)(vii). This interpretation of the BHCA is also consistent with the public policies of compensation and deterrence that weigh conclusively in favor of an expansive interpretation of the Act's scope. *See* Naegele, The Banking Law Journal, *supra*.

Finally, in the absence of a conspiracy claim, BPOP, BPPR and PSL are each still directly liable for their own continuing joint acts of aiding and abetting in violation of the BHCA; and BPOP is also vicariously liable as the holding company for each of the aiding and abetting acts of its subsidiaries BPPR and PSL in violation of the BHCA. *See* 10 Fletcher Cyc. Corp. § 4884.

### 4.  The BHCA And PR-Law Claims Are Not Barred by *Res Judicata*

Under federal law, a party asserting a *res judicata* defense must establish (1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits. *See FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 79 (1st Cir. 2011). As the proponent of the *res judicata* defense, the Popular Entities had the burden -- but failed -- to show herein the presence of all its requisite elements. *Wolf v. Gruntal & Co.*, 45 F.3d 524, 529 (1st Cir. 1995).

Final arbitral awards are entitled to the same preclusive effect as state court *judgments **but only** "as [it] concerns claims and issues actually raised,"* *Wolf*, 45 F.3d, at 528, and "as to **all claims heard** by the arbitrators." (Emphasis added) *Apparel Art Int'l, Inc., v. Amertex Enterprises Ltd.,* 48 F.3d 576, 585 (1st Cir. 1995). Unlike traditional *res judicata* doctrine *"where an issue not passed upon by an arbitrator is the subject of a subsequent action, the award is not a bar to that action."* (Emphasis added) *Wolf*, 45 F.3d, at 529. An issue that was not brought, or that could have been but was not brought in arbitration cannot be precluded in subsequent litigation.[9] Awards are not "judgments" because arbitral tribunals' authority over particular "claims" is "*predetermined by contract*,"[10] and only parties

---

[9] Defendants' argument that the Award bars matters that were not raised but that could have been raised is contrary to the well-settled applicable law. *See Wolf,* 45 F.3d, at 528-29; *Apparel Art Int'l, Inc.,* 48 F.3d, at 585.

[10] *See Cine-Source, Inc. v. Burrows,* 581 N.Y.S.2d 9, 10 (1992) ("the authority of an arbitrator to decide a controversy is derived entirely from the *consent* of the parties").

to the contract can be made parties to the arbitration. Thus, the courts cannot presume that an arbitral panel acquired competent authority over the purported "precluded" claim. *Wolf*, 45 F.3d, at 528.

### A. There is no strict factual identity between the asserted claims.

"[T]o the extent that *Res judicata* has been used in arbitration, *a strict factual identity* has been required." (Emphasis added). *United Elec., Radio & Mach. Workers of Am. v. Honeywell Inc.,* 522 F.2d 1221, 1228 (7th Cir. 1975). "Only where two separate suits involve *sufficiently identical causes of action* does a judgment in an earlier action preclude litigation of claims in a subsequent action." (Emphasis added). *Apparel Art Int'l, Inc.,* 48 F.3d, at 583. Courts follow a transactional approach to determine whether the causes of action raised in separate lawsuits are indeed the same. *Id.* "If the facts form a common nucleus that is identifiable as a transaction or series of related transactions, then those facts represent one cause of action." *Id.,* at 583-84. "Facts forming a common nucleus are those meeting the following criteria: '1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations.'" *Herman v. Meiselman,* 541 F.3d 59, 62–63 (1st Cir. 2008).

The operative facts giving rise to the FINRA Action -- involving *securities claims and transactions* concerning PSL -- and to this BHCA action -- involving *banking claims and transactions* concerning BPPR -- do not form a common nucleus that can be identifiable as a single transaction or series of related transactions. *Instead, they are distinct sets of facts, forming different nuclei of operative facts identifiable as two totally separate and independent wrongful transactions concerning different Popular Entities.* In the FINRA Action, the Trinidads asserted claims against PSL under the securities laws that were also actionable under the PR laws. *See* MTD, Ex. 5, pp. 90-96. The operative facts that gave rise to that action concerned PSL's *mismanagement* of the Trinidads' *securities accounts*. On the other hand, the operative facts giving rise to this action pertain to BPPR's *wrongful banking practices and proscribed tying conditions*. The Trinidads brought this action against the Popular Entities because they all jointly participated in the BPPR's *banking law violations*

**and conspiracy to violate them.** There can be **no strict factual identicality** between the causes of action or the theories of recovery in those two actions since this BHCA claim involves the violation of banking laws, standards and accepted banking practices by Popular; whereas, the arbitrational claims strictly involved breaches of securities laws, standards and accepted practices by PSL.

Likewise, the nature of the **injuries alleged and the remedies sought in the FINRA arbitration and in this action are not the same.**[11] The injury sought to be repaired by, and the remedy granted to the Trinidads in the Award was limited to compensation for the mismanagement of their securities at PSL. On the other hand, the Award could not and did not consider or grant any compensation for the losses alleged herein that were caused to the Trinidads' property by reason of the BHCA's violations. *Id. See also* AC, ¶ 158; Award, Ex. 4, MTD, *supra*.

Further, the facts of these two actions do not form a convenient trial unit and treating them as such does not conform to the parties' expectations. The evidence used to prove in FINRA that PSL was liable for fault in its management of Plaintiffs' securities and the evidence needed to prove herein that the Popular Entities acted in violation of the BHCA is not the same. Accordingly, the facts concerning the banking transactions that need to be proved in this action are totally unrelated to, different and independent from, and do not overlap with, the facts concerning the securities transactions proven at FINRA. *See and cf., for example, Apparel Art Int'l, Inc., supra.*

Lastly, the motives are also not identical. The motive for PSL's misconduct in the arbitral action was the fees and commissions it earned from the **mismanagement of the Trinidads' securities portfolios**. The misconduct of the Popular Entities in this BHCA claim was motivated by their desire to **acquire and maintain the Trinidads' SBLCs and bank accounts** because of the fees and interest payments that BPPR earned from them.

---

[11] "[W]hen defining the contours of the common nucleus of operative facts, it is often helpful to consider the nature of the injury for which the litigant seeks to recover." *See Apparel Art Int'l, Inc.*, 48 F.3d, at 584.

13

Therefore, the FINRA Award regarding PSL's securities violations cannot preclude this unrelated cause of action brought by the Trinidads against the Popular Entities by reason of their violation of a banking law, the BHCA. *See Wolf*, *supra*.

### B. There is no sufficient identicality between PSL and BPPR/BPOP.

Claim preclusion may apply to a prior judgment if the new defendant is closely related to a defendant from the original action or when the two defendants are in privity. *Airframe Sys., Inc. v. Raytheon Co.,* 601 F.3d 9, 17 (1st Cir. 2010). Whether there is a "close and significant relationship" between an original defendant and a defendant only named in a later suit is a fact-specific question. *Id.* A "close and significant relationship" may exist between a parent corporation and a subsequently sued affiliate, or between affiliates. *Id*. The deciding factor is whether "the [later] claims were or could have been brought against the original defendant in the original suit and the subsequent suit tried to hold related defendants liable on related claims." *Id.,* at pp. 17-18. Particularly, ***neither privity nor a close and significant relationship between the parties can exist where, like here, the subsequent claim could not have been brought against the original defendant in the first action***. *See Negron-Fuentes v. UPS Supply Chain Sols.*, 532 F.3d 1, 10 (1st Cir. 2008); *Airframe Sys., Inc.,* 601 F.3d, at 18 & n. 9.

Here, the Trinidads did not, and could not have brought this BHCA claim against PSL in FINRA for the reasons that: PSL is not a bank (§ 1972, *supra*); FINRA had no submission authority to hear these claims (*Cine-Source, Inc., supra*); and, FINRA had no compulsory jurisdiction over BPOP or BPPR because they are not registered broker dealers or parties to the PSL's securities contract with the Trinidads (Award, *supra*). Therefore, ***the strict factual identity requirement of res judicata cannot be met***. *See Negron-Fuentes, supra; Airframe Sys., supra*.; *FleetBoston Fin. Corp., supra*.

### C. That the claims were not asserted as compulsory counterclaims in the Commonwealth action is immaterial.

Defendants argue that, pursuant to Rule 11.1 of PR Civil Procedure, the BHCA and PR law claims are barred by *res judicata* because they were compulsory counterclaims that had to be raised in

the Commonwealth Action. At this stage, Popular's argument fails because no final judgment on the merits has been entered in the Commonwealth Action. *See FleetBoston Fin. Corp.,* 638 F.3d, at 79.

### 5. Plaintiffs' BHCA Claims Are Timely

#### A. The "continuing violation" doctrine.

The Courts that have considered the issue have applied to the BHCA claims the continuing violation doctrine that tolls the statute of limitations when, as here, the unlawful conduct is alleged to be ongoing. *See Lancianese v. Bank of Mount Hope,* 783 F.2d 467 (4th Cir. 1986); *Interamericas Invs., Ltd. v. Bd. of Governors of the Fed. Rsrv. Sys.,* 111 F.3d 376 (5th Cir. 1997). In *Lancianese,* the Court found the antitrust tolling doctrines of continuing conspiracy and continuing substantive violation applicable to the BHCA's claims. 783 F.2d, at 469. That holding set the prevailing norm. *See Interamericas Invs., Ltd.,* 111 F.3d, at 382 ("[T]he BHCA uses the present tense in describing the offenses, making reasonable reading it as contemplating continuing violations" and "that interpretation is due the deference demanded by *Chevron USA v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 [] (1984)."); *Texas v. U. S.,* 891 F.3d 553 (5th Cir. 2018) (same).[12]

A continuing violation occurs where the conduct is ongoing. *See Toussie v. U.S.*, 397 U.S. 112, 135-36 (1970) ("the unlawful course of conduct is set on foot by a single impulse and operated by an unintermittent force, until the ultimate illegal objective is finally attained"). Each continuing violation of the BHCA "inflict[s] continuing and accumulating harm" upon the Trinidads. *See Imperial Point Colonnades Condo., Inc. v. Mangurian,* 549 F.2d 1029, 1038 (5th Cir. 1977). Thus, a new cause of action accrued and the statute of limitations started to run anew each time that the Trinidads were injured by a separate substantive violation of the statute or by an overt act in the continuing conspiracy to violate the statute that was committed within the four years limitations period. *See Lancianese,* 783

---

[12] *See also* 159 Am. Jur. Trials 513 ("the limitations period under the BHCA can be affected by a continuing violation"); ¶ 59-101a.024 Statute of Limitations, Fed. Bank. L. Rep. P 59-101A.024 (the BHCA "contemplates continuing violations").

F.2d, at 470; *Interamericas Invs., Ltd.,* 111 F.3d, at 382. The starting point "is appropriately calculated from the latest violation," *Texas,* 891 F.3d, at 563.

The AC pleads that the initial Tying Arrangement occurred on **November 2010** (§ VII); that the Tying Violation and Tying Conspiracy to violate the BHCA commenced at the time and are ongoing (§ VIII & X); and, that the acts of aiding and abetting in the Tying Violation continued uninterruptedly (§ IX). Each of the well-pled separate substantive violations and each distinct overt act in the continuing conspiracy to violate the Act caused the four-year statute of limitations to start to run anew. *See Zenith Radio Corp., supra; Hanover Shoe, Inc., supra; Imperial Point Colonnades Condo., Inc., supra; Charlotte Telecasters, Inc., supra; Interamericas Invs., Ltd., supra; Lancianese, supra.* Accordingly, Plaintiffs' BHCA claims are timely. *Idem.*

### B. Popular's argument that the AC alleges a single violation is spurious.

Defendants' falsely argue that the "only alleged violation of the BHCA took place in November 2010" (MTD, at p. 12). Contrary to that argument, the well-pled allegations in the AC are sufficient to portray an ongoing conspiracy and a continuing substantive violation of the BHCA. The BHCA not only prohibited the initial extension of credit by BPPR tied to PSL's services and products, but also prohibited the condition imposed upon the Trinidads that they were to continue to receive those tied services and products through a series of separate but ongoing banking and securities transactions throughout the duration of the relationship. *See* 12 U.S.C.A. § 1972(B).

### (1) The tying arrangement of November 2010 (AC, § VII).

The implementation of the Tying Arrangement was summarized in ¶ 69 of the AC. This transaction was documented in an email of **November 18, 2010**. *See* AC, ¶ 86; *see also* ¶¶ 87-88 (diagram illustrating the Tying Arrangement). Paragraphs 70-89 of the AC describe with sufficient particularity the acts of aiding and abetting and conspiracy perpetrated by each of the participants in the Tying Violation and the manner in which they acted in concert to carry it out, including the identity

of the employees of Defendants that participated in the violation, what transpired during their concerted actions, and when and where their concerted acts occurred.

### (2) The Continuing Tying Violation and Tying Conspiracy (AC, § VIII).

The AC pleads that: "[s]ince the **November 2010** execution of the Tying Arrangement, and up to today, BPOP has participated, through BPPR and PSL, in ongoing violations of the BHCA's anti-tying provisions and in a Continuing Tying Conspiracy to violate the BHCA, to keep the Tying Arrangement in continuous existence to this date." AC, ¶ 90. To that end, the Popular Entities have continuously kept the Trinidads' bank accounts at BPPR tied to their investment accounts at PSL and have prevented them from paying off the SBCLs at BPPR, and to withdraw their investments accounts at PSL, to transfer them to one of PSL's competitors. *Id.,* ¶ 91. The AC also describes with sufficient particularity the ongoing and uninterrupted acts of aiding and abetting and conspiracy perpetrated by BPOP (¶¶ 92-95), BPPR (¶¶ 96-97) and PSL (¶¶ 98-105). These acts form part of the continuing Tying Violation and constitute overt acts that each of them committed in furtherance of the ongoing Tying Conspiracy to violate the BHCA. Therein, the Trinidads alleged with sufficient specificity the identity of the employees of BPOP, BPPR and PSL, that participated in the continuing violation, the nature and extent of their substantive acts, their duration, and when and where they occurred.

### (3) The ongoing and uninterrupted acts of aiding and abetting (AC, § IX).

Paragraphs 106-108 of the AC describe with sufficient particularity the ongoing and uninterrupted aiding and abetting acts perpetrated by the Popular Entities that form part of the continuing Tying Violation of the BHCA.

### (4) The continuing overt acts (AC, § X).

Paragraphs 109-192 of the AC describe with sufficient particularity the ongoing and uninterrupted overt acts perpetrated by Defendants in furtherance of the continuing Tying Conspiracy to violate the BHCA, including the identity of their employees that participated in the same, the nature and extent of their overt acts, their duration, and when and where they occurred.

17

**C.  The Trindads are entitled to recovery for all violations.**

"[T]he [continuing violation] doctrine creates an equitable exception to the statute of limitations because it allows recovery for claims filed outside of the statutory period when the unlawful behavior is deemed ongoing." *Torres Roman v. Autoridad Metropolitana de Autobuse,* 2007 WL 9761393 (D.P.R. 2007) (§ 1983 claim). "The doctrine applies [where, as here,] a violation, occurring outside of the limitation period, is so closely related to other violations, not time-barred, as to be viewed as part of a continuing practice such that recovery can be had for all violations." *S.E.C. v. Schiffer,* 1998 WL 226101, at 3 (S.D.N.Y. May 5, 1998). The Trindads "may recover for events outside the [] limitations period if they are deemed part of an ongoing series of [unlawful] acts and there is some violation within the statute of limitations period that anchors the earlier claims." *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 17 (1st Cir. 2002) (internal quotation marks and citations omitted).[13] Therefore, the Trindads are entitled to recovery for all the violations that started in ***November 2010 and continue up to the present***. *Ibid.*

**D.  The limitations defense is premature.**

"[W]here there are unresolved issues of fact which concern the application of the continuing violation doctrine, as there are here, it would be premature to dismiss on this basis." *U.S. S.E.C. v. Geswein*, 2011 WL 4565898.[14] Accordingly, the limitations defense should be denied because it is premature. *Ibid.*

**6.  Popular And PSL Are Proper Defendants**

The Trindads ***do not*** allege that PSL and BPOP, on their own, violated the BHCA. What they allege is that PSL and BPOP did violate the BHCA because they became joint tortfeasors when they ***aided and abetted and conspired*** with the bank -- BPPR -- in the ongoing Tying Violation and Tying

---

[13] *See also* 50:74. Continuing violations, generally, 21 Fed. Proc., L. Ed. § 50:74 (same); § 20:91.32 Continuing violation doctrine, 3D Sec. & Fed. Corp. Law § 20:91.32 (2d ed.).
[14] *See also S.E.C. v. Jackson*, 908 F. Supp. 2d 834, 873 (S.D. Tex. 2012) ("[T]he Court declines, at this stage, to hold that the continuing violations doctrine does not apply to the securities violations at issue here").

Conspiracy to violate the Act. *See* § 1972(2)(F)(vii) and § 1975, *supra*.[15] This is consistent with well-established law that regulates other areas of interstate commerce, such as the securities laws. *See e.g.,* 69A Am. Jur. 2d Securities Regulation Federal, § 944.[16] Any different interpretation of the BHCA would be contrary to "the important public policies of compensation and deterrence" it pursues. *See* Naegele, The Banking Law Journal, *supra*.

### 7.  The Claims Against PSL Are Not Subject to Mandatory Arbitration

"A party who attempts to compel arbitration [under the FAA] must show that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina,* 344 F.3d 134, 142 (1st Cir. 2003). It is this Court's duty "to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011).

The AC pleads that the scope of the clause contained in the investment services contracts with PSL was limited to resolve disputes ***concerning the Trinidads' securities business relationship with PSL*** through arbitration. AC, ¶¶ 64-68. Accordingly, by its clear meaning, the claims brought herein against the Popular Entities do not fall within the scope of that arbitration contract because they concern the Trinidads' ***banking business relationship with BPPR***. *See Dialysis Access Ctr., LLC, supra.*

---

[15] The authorities cited by Defendants only support the argument that PSL and BPOP are not banks directly subject to the BHCA. *See Williams v. Porter Bancorp, Inc.*, 41 F. Supp. 3d 676, 681 (W.D. Ky.' 2014) and 62 Fed. Reg. 9290, 1997 WL 81850 (F.R.) (Feb. 28, 1997). The same did not consider and are not contrary to the argument made herein that, pursuant to § 1972(2)(F)(vii), PSL and BPOP are liable as joint tortfeasors, aiders and abettors and co-conspirators, in BPPR's violations of the Act.

[16] "Third-party complaints may be filed to obtain contribution from joint tortfeasors in SEC Rule 10b-53 actions, so long as the complaint contains an allegation that the third-party defendants were joint tortfeasors." *Id.*; *see also* Attorneys as Aiders and Abettors and as Primary Violators, 4 Law Sec. Reg. § 12:217 ("[W]hen an attorney makes material misstatements as part of a sale of securities, the attorney can be held liable as a primary violator of Rule 10b-5.19.05" even though the attorney is not a registered broker dealer directly subject to the securities laws.); *Ponce v. S.E.C.*, 345 F.3d 722, 729-30 (9th Cir. 2003) ("Auditors violate Section 10(b) and Rule 10b-5 by preparing and certifying publicly filed financial statements that they know, or are reckless in not knowing, are false.").

**8.  The Court Should Exercise Its Supplemental Jurisdiction**

Since the AC states facially plausible federal claims for relief against Defendants, this Court should exercise its supplemental jurisdiction over the PR-law claims. The Popular Entities, however, argue that the Court should abstain from hearing these pendent claims under the doctrine of *Colorado River Water Conservation District* v. *U.S.*, 424 U.S. 800 (1976). This argument is unavailing.

"The Colorado River abstention doctrine consists of a two-part test. First, the actions in the federal and state forums must be parallel, *i.e.,* the two suits must involve substantially the same parties who are litigating substantially the same issues." *Martinez-Rosado v. Instituto Medico Del Norte*, 145 F. Supp. 2d 164, 169-70 (D.P.R. 2001). There is no sufficient parallelism here. Trinidad-Rodriguez, BPOP and PSL are not parties to the PR Action. Further, the issues litigated in both forums are not substantially the same because many of the claims asserted herein were not brought in the PR action. Although some of the claims in the PR Court might be related to some claims brought herein, the facts alleged in this action go beyond the period covered by the counterclaim in the PR action filed in 2014. As shown above, the two actions derive from two separate nuclei of operative facts and do not seek the same relief since Causes of Action Sixth through Tenth were not asserted in the local action. On these grounds alone, the Court should decline deferral to the PR Court.

The second part of the doctrine requires the federal court to determine whether there are "extraordinary circumstances" for the court to surrender its "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. The court must weigh six factors: (1) whether either court has assumed jurisdiction over a *res*; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties. *Burns v. Watler,* 931 F.2d 140, 146 (1st Cir. 1991). No one factor, however, is necessarily determinative and "[o]nly the clearest of justifications will warrant dismissal." *Colorado River,* 424 U.S., at 818-819. The Court must approach the weighing of

these factors "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16 (1983).

The first factor weighs against dismissal because the PR court has no jurisdiction over part of the *res* (Trinidad-Rodriguez's SBCLs), while this Court does over its totality. The second factor is irrelevant since the federal forum is no less convenient for the parties than the local court. As to the third factor, there is no exceptional basis for requiring the case to proceed entirely in the PR court. *See Villa Marina,* 915 F.2d 7, 16 (1st Cir. 1990). To the contrary, the dismissal of Trinidad-Rodriguez's claim would cause him severe prejudice since he is not a party to the PR Action. *See Lebron v. M & G Food Serv.,* 97 F. Supp. 2d 204, 207 (D.P.R. 2000) (Courts "giv[e] most weight to this factor where piecemeal litigation could severely prejudice one of the parties."). Also, most of the pendent claims asserted herein by Trinidad-Garcia are not being litigated there. As to the fourth factor, although the PR Court obtained jurisdiction more than seven years prior to the filing of the present claim, "the order in which jurisdiction was taken is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced." *Navarro v. Puerto Rican Cars, Inc.,* 106 F. Supp. 2d 302, 305 (D.P.R. 2000). Courts are to measure which of the two actions is the more advanced in a "pragmatic, flexible manner, with a view to the realities of the case." *Id.* Given that the majority of the PR-law claims asserted in this action are not before the PR Court and the prevalent delay there, the priority factor does not constitute an "exceptional circumstance" warranting dismissal.[17] Regarding the fifth factor, while the presence of state-law issues will rarely tip the balance in favor of surrendering jurisdiction, "the presence of federal issues must always be a major consideration weighing against surrender." *Moses H. Cone,* 460 U.S., at 25. Since this action is essentially based on federal law and no complex questions of state law exist, this factor weighs in favor of the Court's exercise of its jurisdiction. *See Villa Marina,* 915 F.2d, at 15. Finally, the six factor is

---

[17] In *Navarro,* 15 years after filing a claim in the local court, the Court found that the local proceedings were more advanced than the federal proceedings, but that the pragmatic reality was that given the pervasive delay in the PR court, it was highly likely that the case would proceed to trial faster in federal court. 106 F. Supp. 2d, at 305. The same reasoning applies here.

"significant only as an indication that dismissal -- if affirmatively warranted based on other factors -- would not prejudice the federal court plaintiff." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 536 (1st Cir. 1991). Here, it would prejudice Trinidad-Rodriguez. Further, the right to a jury trial -- not available in PR civil trials -- makes the federal forum more advantageous to the Trinidads. *id.,* at p. 537. Accordingly, this factor weighs against dismissal.

Therefore, Defendants have failed to override the "heavy presumption favoring the [Court's] exercise of jurisdiction," *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 13 (1st Cir. 1990), over the Trinidad's PR-law claims.

## IV.    CONCLUSION

**WHEREFORE**, the Court should deny Popular's MTD and all grounds.

**RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, this 10th day of June 2022.**

/s/Eric M. Quetglas Jordan

ERIC M. QUETGLAS-JORDAN
USDC-PR #202514
**QUETGLAS LAW OFFICES, P.S.C.**
1353 Luis Vigoreaux Ave.
PMB 669
Guaynabo, PR 00966
Tel. (787) 548-1410
QuetglasLaw@gmail.com

/s/José F. Quetglas Jordan

JOSÉ F. QUETGLAS-JORDÁN
USDC-PR #203411
QUETGLAS LAW FIRM, P.S.C.
1353, Luis Vigoreaux Ave.
PMB 657
Guaynabo, PR 00966
Tel: (787) 406-8915
Email: jfquetglas@gmail.com;
quetglaslawpsc@gmail.com

22