# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Juan Felix Trinidad-Garcia and Juan Felix Trinidad-Rodriguez,**<br><br>    **Plaintiffs,**<br><br>    **vs.**<br><br>**Popular, Inc.; Banco Popular de Puerto Rico; Popular Securities LLC; and Insurance Companies 1-3,**<br><br>    **Defendants** | **Civil Action No. 21-1529 (ADC)**<br><br>**Under Bank Holding Company Act, Puerto Rico Pendent Claims for Fault in Causing the Loss in Value of the Pledge Collateral, For Breach of Contract, Request for Specific Compliance and/or Damages, Pre-Contractual Fault and Damages**<br><br>**JURY TRIAL DEMANDED** |

**SURREPLY**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Juan Felix Trinidad-Garcia and Juan Felix Trinidad-Rodriguez,**<br><br>      **Plaintiffs,**<br><br>      vs.<br><br>**Popular, Inc.; Banco Popular de Puerto Rico; Popular Securities LLC; and Insurance Companies 1-3**<br><br>      **Defendants** | Civil Action No. 21-1529 (ADC)<br><br>**Under Bank Holding Company Act, Puerto Rico Pendent Claims for Fault in Causing the Loss in Value of the Pledge Collateral, For Breach of Contract, Request for Specific Compliance and/or Damages, Pre-Contractual Fault and Damages**<br><br>**JURY TRIAL DEMANDED** |

## **SURREPLY**

I.   ARGUMENT ..................................................................................................................1

   1.   Plaintiffs well plead the BHCA violation............................................................................1

      A.   The AC well pleads that Defendants required the Trinidads to transfer from Wachovia to PSL all of their securities accounts. ..........................................................................................1

      B.   Popular's secured-lending arrangement was highly unusual..................................................4

      C.   The AC does state cognizable injuries by reason of the BHCA's violations. .......................5

      D.   The BHCA allows the private action for conspiracy and aiding and abetting. ......................6

   2.   Defendants misstate the clear applicable law when they argue that *res judicata* applies. .........8

   3.   Defendants misstate the clear applicable law when they argue the counterclaim bar does not require a final judgment. ..........................................................................................................10

   4.   The statute of limitations was tolled and the Trinidads are entitled to full recovery because of the continuing violation......................................................................................................10

   5.   The BHCA claims are not subject to arbitration. ...............................................................12

**TO THE HONORABLE COURT:**

**COME NOW,** by and through the undersigned Counsel, Plaintiffs, Juan Felix Trinidad-Garcia ("Trinidad-Garcia") and Juan Felix Trinidad-Rodriguez ("Trinidad-Rodriguez") (collectively the "Trinidads" or "Plaintiffs"), to file this surreply in further support of their request that the MTD be denied in its entirety.

## I. ARGUMENT

Defendants' reply (Doc. # 34) to Plaintiffs' Opposition (Doc. # 30) to the MTD (Doc. # 17) is full of misrepresentations and material omissions, as well as misleading assertions and misguided arguments. Most of these statements and arguments are nothing more than a repetition of those set forth in the MTD and do not warrant any surreply as the same were fully addressed in the Opposition. Plaintiff will only address below misconceptions and misrepresentations brought for the first time in the reply, which, unless clarified and rectified, could conceivably induce this Court to error.

**1. Plaintiffs well plead the BHCA violation.**

As was the case with the MTD, the reply grossly misconstrues the pleadings. Defendants are not allowed to rewrite or mischaracterize the Complaint. Plaintiffs, not Defendants, are the "masters" of this pleading. *The Fair v. Kohler Die Co.,* 228 U.S. 22, 25 (1913) (Holmes, J.); *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, n.7 (1987).

**A. The AC well pleads that Defendants required the Trinidads to transfer from Wachovia to PSL all of their securities accounts.**

The AC well pleads the "tying arrangement through which BPPR extended credit to the Trinidads on the conditions that they ***obtain additional investment services and products from PSL, transfer the management of their investment portfolios to PSL and do not obtain such investment services and products from any competitor of PSL.***" (Emphasis added). AC, ¶ 5. The transfer of their investment portfolios was not limited to the accounts used as collateral. *Id.* Defendants also "prevented the Trinidads from paying off the SCLs at BPPR [and withdrawing] their investments accounts at PSL to transfer them to a PSL's competitor" thereby unlawfully maintaining the securities pledged, among

1

other reasons, to prevent any such transfer. *Id.,* ¶ 91; *see also id.,* ¶¶ 105-106. Moreover, Defendants "acquired" all of the Assets Under Management ("AUM") of Ramos at Wachovia, with an approximate value of $54,000,000, including the Trinidads' joint gross assets of $48,581,507. As part of that acquisition, Defendants ***extended the credit*** to Plaintiffs on the ***additional tied conditions*** that they deposit for service with PSL all of their investment securities accounts, including those in excess of the required collateral. *Id.,* ¶¶ 69, 86-87, 105.[1] That all accounts had to be transferred is further shown by Defendants' agreement to pay Ramos the **$510 k**, upon the transfer to PSL of all of his AUM, and to ***maintain a minimum asset base of $47,900,000 of which around 90% came from Plaintiffs' pledged and non-pledged accounts***. *Ibid.* These are factual allegations that must be considered as true at this stage.

Defendants also misstate the law when they argue that the requirement that the Trinidads obtain from PSL the service of their pledged securities accounts does not amount to unlawful tying under the BHCA. *See* Br., at pp. 16-19, Reply, at pp. 2-4. This argument is based on a false premise since the arrangement consisted of two unrelated products: ***a bank loan and a securities investment product***. Defendants cannot truly challenge that these are two separate products because ***investment products are not – and cannot be – traditional banking products of deposits or obligations for the reason that banks are not allowed to provide securities services or products***. *See* AC, ¶ 47. The BHCA does prohibit this tying arrangement because the securities products are "unrelated to traditional banking." *See Nesglo, Inc. v. Chase Manhattan Bank, N.A.*, 506 F. Supp. 254, 264 (D.P.R. 1980).

Defendants' argument that the Federal Reserve ("FR") recognized the validity of such tying arrangement constitutes a ***grave misrepresentation***, based on an ***unadopted* proposed interpretation** of the BHCA ("unadopted proposal")[2] and a letter from its General Counsel ("GC") ***wherein he relied***

---

[1] The Chart in ¶ 87 illustrates that the Trinidads' joint investment purses were required to be transferred and managed by PSL, albeit not that all were used as collateral.

[2] **Proposed Interpretation** - Anti-Tying Restrictions of Section 106 of the Bank Holding Company Act Amendments of 1970, 68 Fed. Reg. 52,024, 52,029 (Aug. 29, 2003); see, also, Brf., at p. 18; **Ex. 2**.

***on said unadopted proposal***.³ *See* Br., at p. 18; Reply, at pp. 2-4. The proposed interpretation was not adopted because its "recommendations constitute[d] a complete reversal of policies enunciated by the Division when section 106 was enacted; and the Division ha[d] advocated that the Fed rewrite the law completely, which exceeds its powers." *See* **Ex. 1 -** Letter by Timothy D. Naegele,⁴ dated **March 16, 2005**, to the FR Board. In addition, the text of the unadopted proposal nowhere states that such tying arrangement is allowed. *See* **Ex. 2**. That the text of the unadopted proposal would permit a bank to require a "prospective borrower [to] provide the bank specified collateral in order to obtain the loan or to obtain the loan at a favorable interest rate" does not mean the bank is allowed to require that the specified collateral be obtained through non-banking securities products provided by its affiliate. *See* **Ex. 1** and **2**; 12 U.S.C. § 1972. ***The opinions issued by the GC are inapplicable here because they were based upon his interpretation of proposed amendments that were never adopted*** and was limited to the facts therein, which are materially different to those herein. *See* Opp. 5-6. Defendants' reliance on this flawed interpretation of the Fed's power, cited as authority in their Reply brief is not only an attempt to gravely mislead this Court but also disrespects the entire federal regulation process and should not be allowed to stand.

Contrary to Defendants' arguments, the Trinidads give no validity to the GC's opinions. The Trinidads solely addressed them in their Opposition to clarify that, even if the BHCA was to permit BPPR to require that PSL manage the pledged collateral, which the Trinidads argue was not allowed, the arrangement was not permitted because it also required the transfer of their non-pledged securities accounts to PSL to be managed by PSL. Lastly, Defendants acknowledge, by not arguing to the contrary (Reply, at pp. 2-4), that the BHCA was breached when, as here, the Trinidads were required to receive the services and products from PSL for the non-pledged securities accounts.

---

³Brf., **Exh. 10**.
⁴Mr. Naegele wrote the Anti-Tying Provision for the Senate Banking Committee. *See* **Ex. 1**.

### B. Popular's secured-lending arrangement was highly unusual.

Defendants misconstrue the allegations when they argue that a SBCL arrangement is not an "unusual" banking practice. What is unusual was not the SBCL, but the requirements (i) that the Trinidads obtain the cross-selling of banking and non-banking products through the "one-stop platform" Popular One;[5] and (ii) that PSL manage all of the Trinidads' securities accounts, while only part served as collateral. The arrangement was also unusual for the reasons that it was granted for **$25 million** with the illiquid collateral Wachovia refused to accept, as an evergreen loan subject to demand, and without consideration of any: loan application; due date; credit quality of the collateral; credit reports; and other source for repayment. *See* AC ¶¶ 212-213, 219. BPPR also routinely allowed PSL to use the proceeds of the sales of pledged securities to purchase lesser quality securities without making payments to principal. *Id.,* ¶ 222. Further, to carry out the transaction, Defendants had the Trinidads sign, under penalty of perjury, inaccurate information provided in a Federal Reserve Reg U Purpose Form. *Id.,* ¶ 223. The AC also pled the unusual circumstances and practices by which Defendants granted and conditioned the loan, where they acquired the Trinidads' bank and securities accounts from Ramos at the cost of **$510k**, without their request, knowledge, or participation.[6] *Id.,* ¶¶ 5, 69, 73, 86-88. Defendants have not cited any case law, regulatory guidance or legislative history in support of the argument that these arrangements are usual in the banking industry.

Defendants argue that they merely sought to secure the loans with the securities holdings. That is not true. To achieve that goal, they did not need to impose the condition that the Trinidads move their Wachovia securities accounts to PSL. Defendants could have achieved the stated goal by having

---

[5]Defendants again make reference to the text of the unadopted proposal to misrepresent that it would allow the cross-selling of securities services as a condition for the extension of the loan. The proposal would have not allowed these actions "that go beyond cross-marketing or cross-selling and that indicate that the bank will not provide the customer the desired product unless the customer obtains (or provides) another product from (or to) the bank or an affiliate." *See* **Ex. 2**.

[6]Defendants grossly misconstrue and falsely represent to the Court that the Trinidads admitted that **they sought** the loans from BPPR by referring to ¶ 219 of the AC. That assertion was not made therein. On the contrary, the AC alleges that Ramos and the Defendants entered the tying arrangements without any request by, nor the knowledge or participation of the Trinidads. *See* AC ¶¶ 2, 5, 5(1-3), 81, 83.

4

the Trinidads pledge their securities accounts at any other securities firm subject to the same terms of the pledge agreements. *See* pledge agreements, Brf. Ex.'s 1 & 2.

Defendants also quote *Highland Cap., Inc. v. Franklin Nat. Bank*, 350 F.3d 558 (6th Cir. 2003)[7] in support of the argument that the tied products, but not the surrounding circumstances, must be unusual to qualify as a BHCA violation. Here, both the tying of the securities accounts to the requested credit *supra*, as well as the way they became tied, were unusual. Defendants violated § 1972 when they conditioned the credit to the Trinidads on them receiving from PSL the unrelated, non-traditional banking services. That arrangement was certainly unusual and proscribed by the BHCA. *See Nesglo, supra*.

### C. The AC does state cognizable injuries by reason of the BHCA's violations.

The AC well pled that the Trinidads have sustained injury to their property with combined losses of over **$90 million** that were ***"proximately caused" by***, and would have not been sustained ***but for, the ongoing tying conditions***. *See* AC, ¶¶ 232-34; *see also, In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 34 (1st Cir. 2013). It is irrelevant that similar losses could have also been sustained due to PSL's mismanagements of the securities accounts alleged in FINRA. Contrary to Defendants' allegations, these losses are attributable to the unlawful tie itself because without it they would have not occurred. *Id.*

Defendants' reliance on *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342 (11th Cir. 1997) to support of their argument that the BHCA did not create a private cause of action for a fiduciary breach of the BHCA is misplaced. In *Baggett,* the Court held that the ***violation of the civil penalty provisions*** for fiduciary breaches set by § 1972(2)(F) did not create a private action. Conversely, the violations of the anti-tying provisions alleged herein that are stated in § 1972(1) certainly create a private cause of action pursuant to § 1975. *See Baggett, supra.*

---

[7]In *Highland Cap., Inc.,* there was no evidence that the loan was conditioned to any other product. *Id.* at p. 568.

Defendants further misconstrue the BHCA when they argue that *Giannone v. Citizens Banking Co.*, 878 F.2d 381 (6th Cir. 1989) stands for the proposition that cognizable injuries under the Act are limited to, for example, higher fees resulting from the purchase of a tied product. Section 1975, in broad terms and without limitations, allows the recovery for ***any injury to business or property*** "by reason of anything forbidden in section 1972." *Giannone* is an unpublished opinion where the Court did not express any limitations to cognizable injuries under the Act, but merely affirmed the District Court's decision that, inasmuch as plaintiffs made a profit on the entire transaction, they did not suffer injury under § 1975. *Giannone, supra.* The Court further found that "Plaintiffs' claim that they failed to realize a reasonable return on their investment does not state a recoverable injury because section 1972 was not enacted to address the conduct of traditional banking practices." *Id.,* at p. 2. Here, the Trinidads sustained no gain, but instead a huge multimillion dollar loss on the entire transaction; and these losses were not caused by traditional banking practices, but by the proscribed tying violations. *See In re Neurontin Mktg. & Sales Pracs. Litig.*, *supra.*

### D. The BHCA allows the private action for conspiracy and aiding and abetting.

Defendants misconstrue *Baggett, supra,* to argue that § 1972(2)(F)(viii) only applies to banks in governmental enforcement actions of the BHCA. *Baggett* only held that § 1972(2) does not create a private cause of action for violations of the part of the statute that provides for civil fines as a sole remedy. On the other hand, § 1972(2)(F)(viii) states that ***the statute can be violated***[8] ***by concerted or aiding and abetting conduct***. Section 1972(1) prohibits tying concerted conduct between a bank and an affiliate party that violates the Act. Section 1972(2)(F)(viii) states that the conspiracy and aiding and abetting prohibitions must be construed to apply to the private civil action created by § 1975 to obtain recovery for violations of § 1972. *Supra.* This construction is fully consistent with the entire text of §§ 1972 and 1975 and their expansive interpretation that is required to achieve "the important public policies of compensation and deterrence" that led to the enactment of the BHCA. *See* **Ex. 3 -**

---

[8] The term to "violate" "includes any action (alone or with another or others) for or toward causing, bringing about, participating in, counseling, or aiding or abetting a violation." § 1972(2)(F)(viii).

*The Anti-Tying Provision: Its Potential Is Still There*, Timothy D. Naegele, The Banking Law Journal, Volume 100, Number 2 (February 1983).

Defendants, now for the first time, cite *Caribe BMW, Inc. v. BMW AG*, 19 F.3d 745 (1st Cir. 1994) -- where the Court adopted the Clayton Act *Copperweld Corp.'s*[9] holding that a corporation and its affiliated entities could not conspire to violate the Act. Nonetheless, "there is no *per se* rule that a corporation and its wholly owned subsidiary are immune from civil conspiracy claims." (Internal citations omitted). 1 Summ. Pa. Jur. 2d Torts § 13:20 (2d ed.). The holdings in *Caribe BMW, Inc.,* and *Copperweld Corp.,* are statute specific and to be applied only to the Sherman and the Clayton Acts involved therein because both were construed to intend to permit – and not prohibit – intra-corporate concerted action. *See Copperweld Corp., supra; Caribe BMW, Inc., supra; e.g., Shared Commc'ns Servs. of 1800-80 JFK Blvd. Inc., v. Bell Atl. Properties Inc.*, 692 A.2d 570, 572-73 (1997) (limiting the holding to the Sherman Antitrust Act context).[10]

Here, on the contrary, Congress expressly prohibited in the BHCA intra-corporate concerted action when it proscribed "any action (alone or with another or others)" between a bank and "any institution-affiliated party" that violates the Act. *See* 12 U.S.C.A. § 1972. This interpretation of the BHCA is also consistent with the public policies of compensation and deterrence that weigh conclusively in favor of an expansive interpretation of the Act's scope. *See* Naegele, The Banking Law Journal, *supra*.

Defendants further argue that Plaintiffs cite no case in support of the argument that they are liable as joint tortfeasors. None is cited because no Court has yet ruled upon the matter. On the other hand, Plaintiffs did show that joint tortfeasors liability under the BHCA is applicable here because it

---

[9] *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).
[10] "We find no compelling reason, however, to justify a similar *per se* rule ignoring legal corporate form in the common law conspiracy context." *Id.,* at 573.

is consistent with well-established law that regulates other areas of interstate commerce, such as the securities laws. *See e.g.,* 69A Am. Jur. 2d Securities Regulation Federal, § 944.[11]

**2. Defendants misstate the clear applicable law when they argue that *res judicata* applies.**

Defendants misconstrue the law of this Circuit when they cite *Colonial Oaks Assisted Living Lafayette, L.L.C. v. Hannie Dev., Inc.*, 972 F.3d 684 (5th Cir. 2020) and *Brown v. Wheat First Sec., Inc.*, 257 F.3d 821 (D.C. Cir. 2001) to argue that *res judicata* bars the BHCA claims because they could have been raised in the FINRA arbitration; and that *Wolf*[12] merely held that if a claim falls outside of the scope of an arbitration clause *res judicata* does not bar a plaintiff from asserting it in a later proceeding. *Wolf* and the law of this Circuit clearly state the contrary.

In *Wolf*, the Court held that final arbitral awards are entitled to the same preclusive effect as state court *judgments* "at least as [it] concerns claims and issues actually raised." 45 F.3d, at 528. The Court cited in support NY caselaw that limits the preclusion effect to "only claims or issues *actually submitted* to arbitration." *Id.*;[13] *see also* n. 6. The same finding was made in *Apparel Art Int'l, Inc.*,[14] where the Court held that "[a]n arbitration award generally has *res judicata* effect as to **all claims heard by the arbitrators**." (Emphasis provided). 48 F.3d , at 585. "[W]hen a federal district court enters a judgment confirming an arbitration award pursuant to the Federal Arbitration Act, that ***judgment has res judicata effect as to all matters adjudicated by the arbitrators and embodied in their award***." *Id.*[15]

---

[11] *See also* Attorneys as Aiders and Abettors and as Primary Violators, 4 Law Sec. Reg. § 12:217; *Ponce v. S.E.C.*, 345 F.3d 722, 729-30 (9th Cir. 2003) (Auditors found to violate Section 10(b) and Rule 10b-5.
[12] *Wolf v. Gruntal & Co.*, 45 F.3d 524, 529 (1st Cir. 1995).
[13] "*See Rembrandt Indus., Inc. v. Hodges Int'l, Inc.,* 359 N.Y.S.2d 807 1974); *Cine–Source,* at 10; *Lopez v. Parke Rose Management Sys., Inc.,* 138 A.D.2d 575 (1988); *Conforti & Eisele, Inc. v. William J. Scully, Inc.,* 469 N.Y.S.2d 400 (1983); *Wolf* at 528-529.
[14] *Apparel Art Int'l, Inc. v. Amertex Enterprises Ltd.,* 48 F.3d 576 (1st Cir. 1995).
[15] Defendants argue the Plaintiffs conceded dismissal of the 4th and 5th Counts of the AC. That is not true. The 4th Count alleges losses *caused by BPPR to the pledged collateral that was under its absolute control, not PSL's*. AC, ¶ 246, *et. seq.* The 5th Count alleges injuries caused *after the FINRA action was filed* by Popular's continuing fault in contravention of its contractual obligations, and requests compensatory damages, among others, for mental and emotional injury and loss of image and good-will. AC, ¶¶ 261, *et. seq.* These personal losses could not be claimed in arbitration. *See* FINRA Dispute Resolution Arbitrator's Guide, p. 62, *et. seq.* (Guide does not provide for these type of remedies). Counts 4 and 5 cannot be barred because Plaintiffs could have not brought them in arbitration against PSL, nor any other of the Defendants that could not be made party to that action. *See Wolf, supra; Apparel Art Int'l, Inc., supra.*

8

Tellingly, Defendants admit that *res judicata* does not bar the Trinidads from asserting the BHCA claims in this action if, as it happened here, they could not be brought because they fall outside the arbitration clause. *See* Opp., at p. 19.

Defendants also argue that *res judicata* applies because the arbitration claim challenged PSL's management of Plaintiffs' securities portfolios, whereas Plaintiffs allege here that they sustained injury as a result of PSL's management of the exact same portfolios. That is not true. The operative facts that gave rise to the FINRA Action concerned ***securities claims and transactions*** with PSL, where the Trinidads claimed that PSL ***mismanaged*** their ***securities accounts.*** There, the Trinidads asserted claims against PSL under the securities laws that were also actionable under the PR laws. See MTD, Ex. 5, at pp. 90-96. On the other hand, the operative facts giving rise to this BHCA action concern ***banking claims and transactions*** with BPPR, where the Trinidads claim that BPPR engaged in ***wrongful banking practices and proscribed tying conditions that caused the mismanagement and loss of the pledged securities***. In other words, there can be ***no strict factual identicality*** between the causes of action or the theories of recovery in those two actions since this BHCA claim concerns BPPR's violation of banking laws, standards and accepted banking practices, whereas the arbitrational claims strictly concerned PSL's breaches of securities laws, standards and accepted practices.

In addition, there is no *res judicata* herein for the following reasons: the nature of the injuries alleged and the remedies sought in the FINRA arbitration and in this action are not the same; the facts of these two actions do not form a convenient trial unit and treating them as such does not conform to the parties' expectations; and Defendants' motives are the same. *See* Opp., at pp. 12-14. *See, also, Herman v. Meiselman,* 541 F.3d 59, 62–63 (1st Cir. 2008); *Apparel Art Int'l, Inc., supra.*

Lastly, Defendants argue there is sufficient identicality between the parties because here Plaintiffs claim PSL aided and abetted BPPR's violations of the BHCA and they could have alleged the same against it in arbitration. That is not true. Under the arbitration submission agreement FINRA only had authority to hear the Plaintiffs' claims concerning the breaches of the securities contract. *See*

9

Opp., at p. 19. *See, also, Cine-Source, Inc. v. Burrows,* 581 N.Y.S.2d 9, 10 (1992) ("the authority of an arbitrator to decide a controversy is derived entirely from the *consent* of the parties"); *Negron-Fuentes v. UPS Supply Chain Sols.*, 532 F.3d 1, 10 (1st Cir. 2008); *Airframe Sys., Inc.,* 601 F.3d, at 18 & n. 9.

3. **Defendants misstate the clear applicable law when they argue the counterclaim bar does not require a final judgment.**

Defendants misrepresent that Trinidad-Garcia did not contest that his claims are compulsory counterclaims that should have been filed in the Commonwealth Action. In the Opposition, as in here, Plaintiffs did not concede so, but saved for later their response to that argument because it fails on other grounds, inasmuch as there is no final judgment on the merits in the Commonwealth Action. *See* Opp., at pp. 14-15. *See, also, FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 79 (1st Cir. 2011).[16]

Defendants misconstrue the law when they quote *Dindo v. Whitney*, 451 F.2d 1 (1st Cir. 1971) and *Casa Marie, Inc. v. Superior Ct. of P.R. for Dist. of Arecibo*, 988 F.2d 252 (1st Cir. 1993) to argue that a prior final judgment is not required. In *Dindo,* the Court found that a final judgment on the merits was not necessary because the prior action had ended instead by a ***final judgment through settlement***. And in *Casa Marie, Inc.,* there was a prior final judgment on the merits.

4. **The statute of limitations was tolled and the Trinidads are entitled to full recovery because of the continuing violation.**

Defendants misrepresent that Plaintiffs do not dispute that the BHCA violation was complete as of November 2010. The well-pled allegations in the AC are sufficient to portray an ongoing conspiracy and a continuing substantive violation of the BHCA. The BHCA not only prohibited the initial extension of credit by BPPR tied to PSL's services and products, but also prohibited the condition imposed upon the Trinidads that they were to continue to receive those tied services and products through a series of separate but ongoing banking and securities transactions throughout the

---

[16] "[A] party asserting a res judicata defense must establish [a] final judgment on the merits in an earlier suit". *Id.*

duration of the relationship. *See* 12 U.S.C.A. § 1972. The alleged continuing tying violation was not any action to protect the collateral, but to prevent the payment of the debt to keep the tying in place. *See* Opp. 16-18.

Defendants further misstate the law when they argued that, if the continuing-violation doctrine applies, Plaintiffs could recover only for injuries caused by unlawful conduct within the last four years. The case law cited by Defendants is inapplicable here because those cases involved the construction of conspiracy claims that alleged separate but related continuing predicate violative acts. Here, Plaintiffs have also alleged the same ongoing and continuing aiding and abetting substantive violation that started with the initial transaction and lasted until the filing of the AC, the objective being the perpetuation of the tying arrangements. *See and cf. Toussie v. U.S.*, 397 U.S. 112, 135-36 (1970) ("the unlawful course of conduct is set on foot by a single impulse and operated by an unintermittent force, until the ultimate illegal objective is finally attained"). The continuing violation of the BHCA "inflict[s] continuing and accumulating harm" upon the Trinidads. *See Imperial Point Colonnades Condo., Inc. v. Mangurian,* 549 F.2d 1029, 1038 (5th Cir. 1977). The Trinidads allegations are different from the referenced conspiracy cases and similar to those where the Courts have found that, when there is ***an ongoing substantive violation***, the plaintiff "may recover for events outside the [] limitations period if they are deemed part of an ongoing series of [unlawful] acts and there is some violation within the statute of limitations period that anchors the earlier claims." *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 17 (1st Cir. 2002) (internal quotation marks and citations omitted).[17]

Lastly, Defendants further argue that the Trinidads have sustained no injuries since the four-year period prior to the fling of the AC. That is not true. The AC well pled substantial property injuries sustained by the Trinidads since **November 2017**, forward.[18]

---

[17]*See, also,* 50:74. Continuing violations, generally, 21 Fed. Proc., L. Ed. § 50:74 (same); § 20:91.32 Continuing violation doctrine, 3D Sec. & Fed. Corp. Law § 20:91.32 (2d ed.).
[18]*See, e.g.,* On **August 2021** Defendants liquidated securities that caused injury to Trinidad-Garcia in the amount of approximately **$7,102,171** (AC, ¶¶ 281, 286); since November 2010 and ***during that period*** the Trinidads have sustained ongoing injury for interest paid to BPPR in the aggregate of approximately **$5,463,853** *(id.,* ¶ 239); ***during***

11

5. **The BHCA claims are <u>not</u> subject to arbitration.**

Defendants misrepresent that Plaintiffs' claims are arbitrable because they challenge PSL's management of their securities portfolios pledged as collateral for BPPR's loans. That is false. The AC concerns ***BPPR's banking business relationship with the Trinidads*** and challenges ***BPPR's management of the pledged collateral under its absolute control, not PSL's management of the securities accounts***. *See* AC, ¶¶ 64-68. *See, also, Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011).

**WHEREFORE**, the Court should deny Defendants' MTD and all grounds.

**RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, this 27th day of June 2022.**

**WE HEREBY CERTIFY** that on this date, we have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

---

***that same period*** the Trinidads have sustained injury to their image and goodwill for the aggregate amount of approximately **$35 million** (*id.*, ¶275).

/s/Eric M. Quetglas Jordan

ERIC M. QUETGLAS-JORDAN
USDC-PR #202514
**QUETGLAS LAW OFFICES, P.S.C.**
1353 Luis Vigoreaux Ave.
PMB 669
Guaynabo, PR 00966
Tel. (787) 548-1410
QuetglasLaw@gmail.com

/s/José F. Quetglas Jordan

JOSÉ F. QUETGLAS-JORDÁN
USDC-PR #203411
QUETGLAS LAW FIRM, P.S.C.
1353, Luis Vigoreaux Ave.
PMB 657
Guaynabo, PR 00966
Tel: (787) 406-8915
Email: jfquetglas@gmail.com;
quetglaslawpsc@gmail.com