LAW OFFICES

# TIMOTHY D. NAEGELE
## & ASSOCIATES

**Ex. 1**

Internet (e-mail & Web site):
tdnaegele.associates@gmail.com
www.naegele.com or
www.bankinglaw.com

Post Office Box 6408
Malibu, CA 90264-6408

March 16, 2005

Toll-Free Phone (US & Canada):
866/LAW-DCLA (866/529-3252)

Toll-Free Facsimile (US & Canada):
866/FAX-DCLA (866/329-3252)

<u>By FedEx</u>

Honorable Donald L. Kohn
Governor
Board of Governors of the Federal Reserve System
20th Street and Constitution Avenue, N.W.
Washington, DC 20551

Re:   Bank Holding Company Act's Anti-Tying Provision: Proposed Interpretation

Dear Dr. Kohn:

On August 29, 2003, the Board issued its proposed interpretation and supervisory guidance with request for public comment, relating to the Anti-Tying Provision of the Bank Holding Company Act (Docket No. OP-1158). To date, no final action has been taken by the Board; and I respectfully and strongly recommend that no action should be taken.

Indeed, if the Board were to adopt the recommendations of the Justice Department's Antitrust Division, in whole or in part, it is my professional opinion that one or more courts would strike down the Board's actions as being illegal. The Antitrust Division's recommendations constitute a complete reversal of policies enunciated by the Division when section 106 was enacted; and the Division has advocated that the Fed rewrite the law completely, which exceeds its powers.

Attached are two of my articles that have been published thus far this year: one which appeared in the <u>American Banker</u> on January 21, 2005, and another longer law review article which appears in the March 2005 issue of the <u>Banking Law Journal</u>. The latter article is the third in a series of articles that I have written on the subject, since I wrote the Anti-Tying Provision when I served as an attorney with the Senate Banking Committee and staffed former Senator Edward W. Brooke—with respect to whom I later became his Administrative Assistant, before entering the private practice of law.

In drafting the Anti-Tying Provision—which evolved from an earlier bill that I prepared for Senator Brooke, and which he introduced in the Senate as an alternative antitrust approach to the bank holding company issues that were pending before the Senate and House Banking Committees—I chose the Fed to administer the Anti-Tying Provision because I believed it was the most responsible and least biased of the bank regulatory agencies. Obviously I hope that my judgment was correct.

Thank you for considering my comments and recommendations.

With kindest regards,

*Timothy D. Naegele*

Attachments

*Additional Attachment can be reviewed in the Secretary's Office*

# Fed Plan Would Simply Gut Enforcement of Ban on Tying

*American Banker • Friday, January 21, 2005*

*By Timothy D. Naegele*

Congress enacted the Bank Holding Company Act's anti-tying provision, which I wrote, 35 years ago. In August 2003 the Federal Reserve Board proposed an "interpretation" that would emasculate it.

Because the Fed was considered the regulatory agency least biased in favor of banks, it was given discretion to grant such exceptions to the anti-tying provision "as it considers will not be contrary to the purposes" of the statute.

Congress never envisioned that the Fed would use that authority to render the provision impotent. Yet the Fed, the Comptroller of the Currency, and the Justice Department's antitrust division have been doing just that - and recently Congress' watchdog agency, the GAO, whitewashed their actions.

Parallel laws and regulations applicable to banks, bank holding companies, and their thrift counterparts, whether large or small, state or federal, are designed to prevent them from imposing anticompetitive conditions on their customers.

The anti-tying provision exempts so-called "traditional banking practices" from its per se illegality, so banks and savings associations may take measures to protect their loans and safeguard their investments.

However, when a bank or thrift clearly oversteps the bounds, the provision provides for treble damages as well as attorney's fees.

Regrettably, the Fed has ignored the provision's language and legislative history. For example, the agency used its authority to exclude "traditional bank products" offered by an affiliate of the

bank.

Also, the Fed has expressly prohibited only coercive tying arrangements, ignoring a federal decision from the Fifth Circuit. Any requirement of coercion is inconsistent with and more stringent than what Congress intended; voluntary as well as coercive ties violate the anti-tying provision.

The provision is unique in antitrust law in that the plaintiff need not show "anticompetitive effects." Similarly, nowhere in the statute's original legislative history is there any basis for interpreting the provision to apply only to banks (or savings associations), and not to individual defendants as well. Nor does that history preclude both punitive and treble damages.

The agencies have not vigorously championed the provision's avowed purpose - to protect customers and the public against anticompetitive practices and abuses. In fact, the Fed and the OCC have arguably done the bidding of financial institutions instead of fostering the public good.

Most disturbing is the recent position taken by the Department of Justice's antitrust division, which has advocated that the Fed interpret the anti-tying provision "to be consistent with, and not broader than, the federal antitrust laws" - by expanding the "range of exemptions" or exceptions, if necessary.

Such views constitute a complete reversal of policies that the division enunciated when the provision was enacted. In essence, the division has advocated that the Fed rewrite the law.

There is no doubt that the Fed's adopting the division's recommendations and legislating by exception would be illegal and subject to being struck down by the judiciary. Surely the public deserves something better from those entrusted with safeguarding their interest.

Because the government is ill equipped to ferret out tying abuses, courts and regulators should not constrain private litigants and their counsel from obtaining treble-damage recoveries. The anti-tying provision will reduce bank misconduct

and benefit consumers only if regulators and the judiciary promote the rights of private litigants to police abuses.

*Mr. Naegele was counsel to the Senate Banking Committee and the chief of staff to former Sen. Edward W. Brooke, R-Mass. He now practices law in Washington and Los Angeles at his firm, Timothy D. Naegele & Associates.*